## SEAFIELD v. BOHNE et al., Appellants.

### Division One, October 14, 1902.

1. **Practice:** RECEIVING EVIDENCE SUBJECT TO OBJECTION. The receiving of evidence "subject to objection," is a bad practice, and will be reversible error if the point is properly preserved by exception.

2. **Public Road:** ORIGINAL JURISDICTION. The county court is the only tribunal which has original jurisdiction of a proceeding to open a public road. The fact that the county has township organization and township road commissioners, does not deprive the county court of original jurisdiction of such proceeding.

3. ————: JURISDICTIONAL MATTERS: ERRORS OF PROCEDURE. The filing of the statutory petition for a public road and the giving of the requisite notice, put the county court in full rightful possession of a proceeding to open a public road. It then has jurisdiction to enter final judgment sustaining the petition or dismissing the proceeding, and errors thereafter committed which are not in excess of the court's jurisdiction will not render its judgment invalid or subject to collateral attack.

4. ————: AT COUNTY'S EXPENSE: PAYMENT BY PETITIONERS. It is not necessary in order to give the county court jurisdiction of a proceeding to open a public road, that the court enter of record a finding to the effect that the facts justify the location of a road at the expense of the county. It has jurisdiction to proceed if the petitioners pay to the county treasurer the probable amount of damages, as fixed at the time by the court. And this requirement of the statute is met if the court makes and enters of record a finding, from the evidence, that, taking into consideration the advantages and disadvantages, the damages would amount to nothing, and thereupon makes an order to the road commissioners to view, survey and mark out the road at the expense of the petitioners, etc.

5. ————: ————: ERRORS OF JUDGMENT. The holding of a county court that it has the right to condemn land for a public road otherwise than at the expense of the county, and the setting off against a landowner's probable damages advantages not peculiar to him but such as are shared by the public, are not jurisdictional matters, but errors of judgment, if errors at all.

6. ———: COSTS OF CULVERTS AND GRADING. The failure of the road commissioner to estimate the cost of culverts and grading in his report, is not a failure of a jurisdictional fact, if the report states that their cost was to be paid by the petitioners, and the order of the court finds that the road is a public necessity and orders that it be opened at the expense of the petitioners and the final order recites that the damages have been paid by them.

7. ———: GROWING CROPS. The fact that there was a crop of timothy growing on the land at the time the final decree establishing a public road was entered, but which was harvested before the suit to enjoin the opening of the road was tried, should not affect the court's decree.

8. ———: DAMAGES: PAYMENT TO TREASURER. The payment to the county treasurer for the landowner of the amount of damages sustained by him by the opening of a public road, will be considered in a collateral proceeding a payment to him.

9. ———: FOR PRIVATE BENEFIT: ABUSE OF PROPERTY RIGHTS: COLLATERAL ATTACK. It is an abuse of power and violative of constitutional property rights for a county court to take private property under the guise of taking it for public use when in fact it is only for the convenience of private persons who are willing to pay for it. But it is the duty of the citizen to avail himself of the process of the law provided for his protection, and not quiescently stand by and see a court exercise its rightful jurisdiction without objection or exception from him, and afterwards undertake to overthrow its judgments by collateral proceedings.

Appeal from Dade Circuit Court.—*Hon. D. P. Stratton,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. M. Hoskinson* and *William B. Skinner* for appellants.

(1) In this case, respondent in his petition makes the simple general averment, "that he will be irreparably damaged," if the proposed road is opened up through his lands; he neither pleads nor did he offer any evidence at the trial, tending to show "how, in what way, and for what reason the threatened damages were irreparable;" and the request of

appellants for judgment on the law, pleadings and evidence, at the close of the evidence in the trial court, should have been granted.   McKinzie v. Mathews, 59 Mo. 99; McPike v. West, 71 Mo. 199.   (2)  It is well settled in the jurisprudence of this State that county courts have original and exclusive jurisdiction to hear and determine, upon proper petition and due notice, whether a new road should be established over the route described in the petition; and when it appears upon the face of the proceedings that these jurisdictional facts have been ascertained and determined by the decision of such court, then such decision is conclusive against a collateral attack.   Lingo v. Buford, 112 Mo. 155; Ziebold v. Foster, 118 Mo. 354; Baubie v. Ossman, 142 Mo. 499. (3)   A county court having become possessed of jurisdiction of the subject-matter and of the parties, by the filing of a proper petition and the giving of proper notice, a mere erroneous exercise of such jurisdiction would not render the entire proceedings open to successful collateral attack; the remedy in such case would be by certiorari or appeal.   Southerland v. Holmes, 78 Mo. 399; Transportation Company v. Sims, 28 Mo. App. 64; United States v. Arrendo, 6 Pet. 691; Windsor v. McVeigh, 93 U. S. 278; Baubie v. Ossman, supra. (4)   The road proceedings referred to in this record are governed by sections 7796, 7797, 7798, 7799, 7800 and 7805, Revised Statutes 1889, except as amended by the Act of March 23, 1893 (Laws 1893, pp. 222-4, and Laws 1895, p. 248).   These different sections of the statutes of 1889, amended as above stated, appear in the revision of 1899, and are therein enumerated as sections 9414, 9415, 9416, 9417 and 9423, respectively.

*Edgar P. Mann* for respondent.

(1)   The right of eminent domain is in effect nothing more than a power to oblige the citizen to sell and convey his land when the public necessity requires it.   Elliott on Roads

and Streets (2 Ed.), sec. 234; Carson v. Coleman, 11
N. J. Eq. 106; Weekly v. Chicago, 61 Ill. 147.   (2)   The
power to take private property for public use without the
consent of the owner is in derogation of the rights of the
citizen, and can only be justified on the ground of absolute
necessity.   Leslie v. St. Louis, 47 Mo. 477; Anderson v.
Pemberton, 89 Mo. 65; Bill of Rights, sec. 21, Constitution.
(3)   The power to take private property for public use with-
out the consent of the owner is a summary proceeding in de-
rogation of common law and common right, and the utmost
strictness is required in order to give it validity, and unless
it affirmatively appears upon the face of the proceedings that
every prerequisite of the statute conferring the authority has
been complied with such proceeding will be void.   Anderson
v. Pemberton, 89 Mo. 61; Leslie v. St. Louis, supra; Whitley
v. Platte Co., 73 Mo. 30.   (4) It is no answer to say that
certain things in a given enactment of the Legislature con-
ferring the authority on county courts to open public roads
do not appear to be essential.   Everything is essential which
the law has said should be done before this high prerogative
right can be carried out and enforced.   Anderson v. Pem-
berton, supra.   (5)   And unless upon the face of the pro-
ceedings had it affirmatively appears that every essential pre-
requisite of the statute conferring the authority has been
complied with, every step from inception to termination will
be *coram non judice.*   Ellis v. Railroad, 51 Mo. 200.   (6)
It is a jurisdictional fact, which must affirmatively appear,
that such road is a public necessity.   Colville v. Judy, 73
Mo. 654; Jefferson v. Cowan, 54 Mo. 234; Railroad v. Camp-
bell, 62 Mo. 585.   (7)   Injunction is the proper remedy in
this case, and the question of insolvency or irreparable dam-
age does not enter into it.   McPike v. West, 71 Mo. 199;
Carpenter v. Gresham, 59 Mo. 247; Jones v. Zink, 65 Mo.
App. 415; Anderson v. Hamilton, 12 Ohio St. 635; Lakenon
v. Railroad, 36 Mo. App. 372; Church v. School Dist., 55

Wis. 399.    (8)  In ordering the road opened at the expense of the petitioners, and in finding that petitioners would pay the expenses of bridging, making culverts and grading the county court exceeded its authority, and the order was void.    Bell v. County Court, 61 Mo. App. 181.    It was in violation of the Constitution and, hence, the act void in the county court to order the road opened, or for the road commissioner to proceed to open it until respondent's damages had been paid or deposited in court, not with the county treasurer, for his benefit.    Bill of Rights, sec. 21; Elliott's Roads and Streets, sec. 234.    (9)  The county court is required, at every stage of the proceedings, as a condition precedent to its right to make any order upon the hearing of the petition for a public road, to find that the road petitioned for is a public necessity, and of such great public necessity as to justify its opening, bridging and grading at the expense of the county. R. S. 1899, secs. 9416 to 9418.    (10)  The failure of the court to find and recite in its record that the three commissioners appointed to assess respondent's damages were disinterested freeholders of the county, not of kin to either party, rendered their appointment and all subsequent proceedings void.    Jones v. Zink, 65 Mo. App. 413; Fore v. Hoke, 48 Mo. App. 254; R. S. 1899, sec. 9417; Bill of Rights, sec. 21.

VALLIANT, J.—This is a suit in equity to enjoin the defendants, who are the judges of the county court of Dade county and the road commissioner of Lockwood township of that county, from opening a public road through plaintiff's land.    The material statements in the petition are to the effect:    That the county court made an order to open a public road through plaintiff's land and the defendant road commissioner is proceeding to execute the order.    That the court was without jurisdiction and the order void for several reasons: first, the notice required by law of the intended application for the opening was not given; second, the court failed

to assess the probable damages to plaintiff, refusing to consider the disadvantages to him, but assessed against him benefits that were common to the public; third, the court did not find the fact that the road would be of such public necessity as to justify its being opened at the expense of the county; fourth, the road commissioner appointed to view, survey and mark out the road made his report, but failed to estimate the cost of bridges, culverts and grading, and failed to report the amount of damages claimed by plaintiff, and failed to procure the right of way from two other owners of land through which the road was proposed; fifth, the court appointed commissioners to assess plaintiff's damages, but had no jurisdiction to do so for the reasons above given, and the commissioners assessed plaintiff's damages at $50, but the same had never been paid or tendered to plaintiff or paid into court for him; sixth, that at the date of the order for opening the road there was a crop growing on plaintiff's land and no time was given him to harvest the same, and the crop at the time the suit was filed was still growing; seventh, Lockwood township was organized as a municipal township at the time of these proceedings, and had a board of road commissioners who alone had jurisdiction to open the road.

The answer joined issue as to the facts on which the jurisdiction of the county court was challenged.

It is conceded by the plaintiff that the petition for the opening of the road, which was the foundation of the proceeding in the county court, was sufficient and in conformity with the statute, and that it was duly filed. This petition the plaintiff introduced in evidence, and then offered the notice that was given, which was objected to by defendant, and the court ruled that it would be admitted subject to the objection. Plaintiff then introduced the order of the county court of date November 16, 1896, which recited the filing of the petition and the notice thereof, which was in conformity to law. The order concludes as follows:

Seafield v. Bohne.

"There being no remonstrance presented, the court heard all the testimony presented, and the court after hearing the testimony are of the opinion from the evidence, that said proposed road is of public necessity and practicability, and the probable damages to landowners through which said proposed road shall run is nothing, the advantages and disadvantages to said owners being equal, and the expense of locating said road and opening the same, grading and bridging, is to be paid by the petitioners; and the court is of the opinion from the evidence that the facts justify the location of said public road at the expense of the petitioners, and there being no probable damages found by the court, and none required to be paid by the petitioners, it is therefore ordered by the court that the county road commissioner view, survey and mark out such road at the expense of the said petitioners according to law, and report his proceedings at the next regular term of said court."

The next order of the county court was at the February term, 1897: "Now at this day comes J. C. Hedgecock, county surveyor and ex-officio road and bridge commissioner for Dade county, and makes report of his survey on the public road petitioned for by J. A. Higgins et al. Said surveyor reports that all the rights of way have been secured except that of C. A. Seafield, which report is received by the court, and it appearing from the report that C. A. Seafield has not given the right of way, it is therefore ordered by the court that Ewing Morris, Sam McMillin and Bob West be and they are hereby appointed commissioners to hear complaints and assess damages that the said C. A. Seafield may sustain by reason of the establishing of said road over or through his lands. And it is further ordered that commissioners make report thereof at the next regular term of this court."

Then followed in evidence the report of the commissioner, to which was attached a duly certified order of the county court, as follows: "In the matter of the petition for

a public road. And now the above cause coming on to be heard and................road commissioner, having filed herein his report, and it appearing from said report that C. A. Seafield, through whose lands the proposed new road runs, has failed or refused to relinquish the right of way for the same; it is therefore ordered by the court that Ewing Morris, Sam McMillen and Bob West, three disinterested freeholders of the county, be and they are hereby appointed to act as commissioners to view the premises, hear complaints and assess the damages which the said..........may severally sustain by reason of the location of said new road, and make due report of their proceedings herein according to law."

The report was in due form and to the effect that the commissioners first notified all the parties in interest except C. A. Seafield who could not be found on his premises and proceeded to view the premises and hear all the testimony offered and assessed the damages of Seafield at $50. The report was returned into court April 3, 1897. At the May term the final order in the matter was made as follows:

"In the matter of the public road petitioned for by J. A. Higgins, et al.: Now at this day, the sixth of May, 1897, it being the fourth day of term of this court, and the commissioners' report in the matter of the assessment of damages having been filed on the first day of the term of this court allowing C. A. Seafield the sum of fifty dollars for damages to his said tract of land over which said road ran and there being no written exceptions filed by said Seafield, or any other interested parties, to said report of commissioners assessing damages, and this being the fourth day of the term, said report is taken up by the court, examined, accepted and approved and the court further finds that said damages have been paid by the petitioners. It is therefore ordered by the court that said road be established and opened as prayed for in the petition, and that the same be opened

thirty feet wide, and that the land so condemned and re-
linquished shall be forever considered and adjudged to be a
public highway and until changed or annulled by law, and
it is further ordered and adjudged that the owners of the
land along said road have thirty days from the date of this
order in which to give possession thereof to the road over-
seer of the district, and the county clerk shall record the
reports of the road commissioner and commissioners to assess
damages."

Plaintiff then offered evidence to show that there was
at the time a crop growing on the land. Defendant objected
and the court ruled that the testimony would be heard sub-
ject to the objection. The testimony was to the effect that
in May, 1897, there was a crop of timothy growing on the
land which was harvested in August of that year. Plaintiff
then offered testimony tending to show that he had never been
paid nor tendered pay for his damages. The testimony was
objected to by defendant and the court ruled that it would be
received subject to the objection. The defendants introduced
the report of the county commissioner of roads of his pro-
ceeding, under the order of November 16, 1896, which was
to the effect that he had viewed the route and seen the parties
and that all the owners of the land to be taken, except C. A.
Seafield, to-wit, J. A. Higgins, J. C. Spain and C. Ladd,
had given the right of way, but that Seafield had refused and
claimed damages, the amount of damages "not known;" that
he had estimated the cost of the work required to be: "bridges
$125, to be built by the parties; culverts to be done by the
petitioners; and grading $———." A survey and plat of the
proposed road was made a part of the report.

Defendant then offered evidence tending to show that
one of the petitioners, Higgins, after the report of the com-
missioners assessing plaintiff's damages had been returned,
came into the county clerk's office and offered to deposit $50

Vol 169 mo—35

to pay the damages, the clerk referred him to one of the judges of the county court, the court not being then in session, the judge consulted the clerk, who advised that it be paid to the county treasurer, who took it on condition to be paid to C. A. Seafield on order of the clerk. To that testimony plaintiff objected and the court received it subject to the objection.

Plaintiff then offered evidence to show that in 1891 Lockwood township had duly elected to come under township organization and had done so.

The court entered a final decree enjoining the defendants from taking the plaintiff's land for the public road as threatened. From which judgment the defendants appeal.

I. It will be noticed that during the progress of the trial evidence was offered to which objections were interposed and the court made no ruling but heard the evidence, "subject to the objection." That is a very unsatisfactory course. In this case the abstract does not show that the court ruled on these reserved questions at all, so we do not know whether the evidence was finally weighed or rejected. But even if the rulings are announced before or at the time of announcing the findings, the practice is still very unsatisfactory; we never know in such case what influence the evidence may have had while it was retained, even though it was in the end adjudged to be incompetent. A party whose objection is thus held in suspense does not know whether he is to introduce evidence on his part to combat that so offered or to trust to the final rejection of the evidence of his adversary. It is bad practice and would be reversible error if the point were properly preserved by exception.

II. The county court is the only tribunal which, under our law, has original jurisdiction of a proceeding to open a public road; from its judgment an appeal lies to the circuit court where the trial is *de novo* (sec. 9419, R. S. 1899), and thence to the Supreme Court. There is no doubt but

Seafield v. Bohne.

that the county court had jurisdiction of the proceeding now under review; the filing of the petition and the giving of the notice put the court in full rightful possession of the case and authority to proceed. It had jurisdiction to enter final judgment in the case either dismissing the proceeding or sustaining the petition. In order to render its judgment valid the court must proceed in the manner pointed out by the statute. But not every error the court may commit in the course of the procedure will render its judgment void or subject to a collateral attack. There may be errors that can be corrected only on appeal or *certiorari* and if in such case there be no appeal or *certiorari* prosecuted, the judgment must stand unimpeached. It is only when the county court acquires no jurisdiction of the case in the first instance, or when after having acquired jurisdiction it goes beyond its limits, that its action is to be treated as a nullity. The distinction must be preserved in this as in other cases between the committing of an error by the court and going beyond the boundaries of its jurisdiction. And the distinction must also be observed between a mere error of judgment in the court and a jurisdictional fact existing outside of the court's procedure. For example, in some cases it is essential to the exercise of the right of eminent domain that an attempt first be made to agree with the owner of the land, upon a price to be paid him for it. The failure to do that will render the whole condemnation proceedings void and liable to a collateral attack. [Leslie v. St. Louis, 47 Mo. 477; Railroad v. Young, 96 Mo. 39.] But that is a fact existing outside of the court's procedure and whilst it must appear on the face of the record, yet it is as a fact independent of the court's rulings, and is not to be classed with a mere error committed by the court in the course of its proceedings.

The law is as the learned counsel for respondent insists, that the taking of private property for public use is the exercise of a power that is limited to be used in a particular

manner and all the requirements of the law must be satisfied before the property can be taken. That is as true of proceedings in the circuit court as of those in the county court, yet it is not every error that the circuit court may commit in a condemnation suit that will render its judgment subject to a collateral attack.

Now, what does the evidence in this case show that the county court has done to render its proceedings void?

Section 9416, Revised Statutes 1899, directs that upon hearing the evidence "in regard to the public necessity, practicability and probable damages," etc., if the court "be of the opinion that the facts in the case justify the location or change of the road at the expense of the county, they shall make an order of record requiring the county road commissioner to view, survey and mark out such road, or otherwise such proceeding shall be dismissed." Respondent interprets this to mean that unless the county court causes to be entered upon its record that the facts justify the location of the road at the expense of the county, the court has reached the end of its jurisdiction and must dismiss the case.

The statute continues, however, with a proviso that if the petitioners pay into the county treasury for the use of the landowners, the probable amount of the damages, which shall be fixed at the time by the court, then the order to the road commissioners shall issue.

Thus the statute contemplates that the order may be based on either one of two conditions, namely: first, that the damages are to be paid by the county, in which event the court must first be satisfied that the facts justify the opening of the road at the expense of the county, or, second, that the damages are to be paid by the petitioners, in which event the court is to name the probable amount and the petitioners are to pay it to the treasurer for the use of the landowners.

The order of the court in this instance indicates that it was going on the theory that the petitioners were to pay

the damages, and that the court was satisfied from the evidence that, taking into consideration the advantages and the disadvantages, the damages would amount to nothing and that therefore the petitioners were required to pay nothing into the treasury, and thereupon made the order to the road commissioner to view, survey and mark out the road at the expense of the petitioners and report his proceedings to the next term of the court.

That order was not a condemnation of the plaintiff's land, it was only preliminary to other steps to be taken that might or might not, as the court would in due time decide, result in a final judgment of condemnation, but in all of which the plaintiff would be entitled to be heard. The court in all this was acting in accordance with the requirements of the statute as it construed the statute to mean. Let it be conceded that its construction of the statute was wrong; that it had no right to condemn the plaintiff's land for the public use otherwise than at the expense of the county; that in estimating the probable damages that plaintiff would sustain the court improperly set off against his damages advantages not peculiar to plaintiff but such as were shared also by the public; let all this be conceded (concerning which however we express no opinion), still it is only an error in judgment on the subject of which the court had full jurisdiction.

The statute, section 9416, also requires the road commissioners to whom the order is given to procure relinquishments of the right of way from those who will give it and see that the same are filed with the clerk and report the names of those who will not give the right of way and the amount of damages claimed by each and estimate the cost of bridges, culverts and grading and make a survey and plat of the proposed road and return it all to the court on or before the second day of the next term. Then the statute proceeds: "And if it appears from said report that the

right of way has been secured and filed as aforesaid, or that the damages claimed does not exceed the amount offered by the court, or deposited by the petitioners as aforesaid, the court shall order the road established or changed as the case may be."

The proposed road was to run through lands of four persons, three of whom were petitioners for the road and relinquished the right of way; the fourth was the plaintiff who declined to relinquish. The report of the road commissioner showed that the three relinquishments had been obtained and filed, that the plaintiff claimed damages but the amount was not known, an estimate of the cost of the bridges was given but that of the culverts and grading was not given, but it was stated that the cost of the bridges and culverts was to be paid by the petitioners. Upon the coming in of this report the court appointed three commissioners to assess the plaintiff's damages, who assessed the damages at $50 and made their report in due form. The point is made in the brief of respondent that the order of court does not show that the three commissioners were disinterested freeholders not related to either of the parties. The plaintiff introduced in evidence what purported to be two orders of the court, one read from the record and one attached to the report of the commissioners and duly certified by the clerk; in the one no mention is made of the qualification of the commissioners, in the other they are described as "three disinterested freeholders of the county." But there was no such issue as that tendered in the petition, and the question was not before the trial court. The statute provides (sec. 9417) that any party interested may file exceptions to the report of the commissioners, whereupon the court is required to cause a jury to come to make the assessment. No exceptions were filed to this report and after the time for filing the same had expired the court took up the case and made the final order, reciting that the dam-

ages had been paid by the petitioners.   The plaintiff insists that the failure of the road commissioner to estimate the cost of the culverts and grading was the failure of a jurisdictional fact without which the court could go no further. His argument on this point comes back to his original proposition that the county court could not lawfully decree that the road be opened until it found as a fact and so entered it on the record that the proposed road was of sufficient public necessity to justify its being opened at the expense of the county.   The county court did find that it was a public necessity and practicable, but they did not say that it was of sufficient necessity to justify its being opened at the expense of the county, but as the petitioners offered to pay the expense, the order was that the road be opened and established at their expense.   The order recites that the damages assessed were paid by the petitioners.   If the payment to the plaintiff is a jurisdictional fact, as is insisted, the recital of the fact in the order of the court is conclusive.   [Lingo v. Buford, 112 Mo. 149.]   This is one of the points, however, on which the court heard parol evidence "subject to the objection."   The evidence on that point, whether admissible or not, shows that if the money was not paid to plaintiff it was only because he would not apply to the county treasurer for it; it is there for him.

There is much force in the argument of learned counsel for plaintiff that a county court ought not to be allowed to take private property under the guise of taking it for public use, when in fact it is only for the convenience of private persons who are willing to pay for it.   Such an act would be an abuse of power and would violate a constitutional property right.  · But when private property rights are threatened it is the duty of the owner to avail himself of the process of law for his protection, and if he stands by and allows a court in the exercise of its rightful jurisdiction to decide questions of

law or of fact contrary to the correct interpretation of the one or to the weight of the evidence as to the other, and neglects the means at hand to correct the error he can not afterwards treat the whole proceedings of the court as a nullity.

These views are not in conflict with the decisions of this court relied on by the learned counsel for respondent. Anderson v. Pemberton, 89 Mo. 61, was an appeal from a judgment in proceedings begun in the county court. That is the regular course to correct such errors. Leslie v. St. Louis, supra, was a collateral assault by injunction on the validity of the judgment, but the case, as above pointed out, was founded on the fact that no attempt had been made to obtain the consent of the owner of the land sought to be condemned. Whitely v. Platte County, 73 Mo. 30, was an appeal from a judgment in a proceeding that originated in the county court. McPike v. West, 71 Mo. 199, only holds that in a case in which the petition for an injunction to restrain road overseers from trespassing on the plaintiff's premises states otherwise a good cause of action, it is not necessary to state that the defendants are insolvent.

The views expressed in this opinion are in harmony with the former rulings of this court on this subject. [Sutherland v. Holmes, 78 Mo. 399; Zeibold v. Foster, 118 Mo. 349; Baubie v. Ossman, 142 Mo. 499.]

The fact that Lockwood township had adopted township organization and had a board of road commissioners, did not affect the jurisdiction of the county court to establish a new road. [Sec. 9512, R. S. 1899.]

The fact that there was a crop of timothy growing on the land in May, 1897, but which was harvested in August of that year, should have had no influence in decreeing a perpetual injunction in November following.

Our conclusion is that if the county court made any mistake in its judgment touching any of the matters in issue in

the proceeding to open the road in question, it was an error of judgment which could have been reviewed and corrected in the manner provided by law for relief against such errors, but that it did not render the judgment void as one the court had no jurisdiction to render, nor subject it to collateral attack.

The judgment is therefore reversed and the cause remanded to the circuit court with directions to enter judgment for the defendants, dismissing the plaintiff's bill. All concur.