## TURNER, Appellant, v. CAMPBELL, Respondent.

### St. Louis Court of Appeals, March 19, 1907.

1. **ADMINISTRATION: Non-Resident Intestate: Insignificant Assets.** Where a non-resident died in this State leaving trunks, a valise and contents of unknown value, there being no widow or minor children, an administrator of the estate of the deceased appointed by the probate court could not be removed on the ground that there were no assets or that the assets were of inconsiderable value.

2. ————: ————: **Assets Brought Into the State.** Where a non-resident died in this State and a trustee representing the heirs after the death collected money belonging to the estate in a foreign State for the purpose of settling up the estate, brought it to this State and held it for more than a year without paying the debts of the deceased in this State, the probate court had authority to appoint an administrator to administer upon such assets.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Ball & Sparrow* for appellant.

*E. E. Campbell* and *Pearson & Pearson* for respondent.

GOODE, J.—This is a proceeding to remove E. E. Campbell as administrator of the estate of Joseph Edwards, deceased. The deceased resided in the State of Ohio, but had two children living in the city of Louisiana, Pike county, Missouri. Early in October, 1903, he and his wife came to Missouri to visit their children. Mrs. Edwards died in Pike county in January, 1904, and within two or three weeks her husband, Joseph Edwards, died there also. Prior to his death he had agreed to sell a house and lot he owned in Ohio, to Mrs. Annie Murray, for $425. The property was subject to a mortgage to be paid out of that fund. A lawyer by the name of Donovan, who resided in Ohio and was acting as attorney for Mrs. Murray, drew up a deed and sent it to Edwards to sign. This was after the death of Mrs. Edwards. About two weeks before he died Edwards executed the deed and returned it to Donovan, but it did not pass into the hands of Mrs. Murray, the purchaser, until after Edwards had died. Donovan questioned the validity of the deed under those circumstances, because the purchase money had not been paid to Edwards and, in consequence, the children and heirs of Joseph Edwards executed a deed to the property to their friend N. V. Turner, the appellant, so that he might make a transfer of it and collect the purchase money. In his testimony Turner spoke of the deed from the heirs to him as a power of attorney; but though it was given for the purpose of enabling him to represent them in conveying the property in a manner satisfactory to Mrs. Murray, and to collect the purchase money from her, it was an ordinary warranty deed. The deed to Turner was made in Ohio, whither he and the children of the deceased had taken the body of Mr. Ed-

wards. While there they attempted to finish the transaction with Mrs. Murray and Donovan's objection to the deed of the deceased was raised. Turner conveyed the property to Mrs. Murray for the orignal price of $425, paid off the mortgage and returned to Louisiana with the balance of the money. He had defrayed the funeral expenses of Mr. and Mrs. Edwards, thereby becoming a creditor of the estate of the deceased. Edwards owed debts in Louisiana for medical attendance and other things, and on the 17th of May, 1905, a year and four months after his death, the probate court appointed Campbell administrator of his estate. Six days afterwards, Turner, as a creditor of the estate, filed a motion in the probate court to revoke the letters of administration. The court refused to revoke them and the same ruling was made in the Court of Common Pleas on appeal. The appeal to this court was from the judgment of the Court of Common Pleas. Several reasons are assigned why Campbell should be removed, but the only one pressed is that the deceased left no property in Pike county to be administered and, therefore, the probate court had no authority to grant letters to Campbell, or any one else. Turner swore the deed to him was executed by the heirs to enable him to settle the estate; that he collected the proceeds of the house and lot from Mrs. Murray and held the money as representative of the estate of Joseph Edwards and was willing to settle at any time. One of the daughters swore the heirs assigned everything to Turner to give him the legal right to settle the estate. This evidence makes clear the capacity in which Turner claimed to hold the proceeds arising from the sale of the property to Mrs. Murray.

It is difficult to conceive any theory on which Turner would have the right, either as a creditor of the estate or as a trustee of money belonging to it, to move to vacate the adminstration, unless the grant of letters

to Campbell was absolutely void. In that case he might be interested in either capacity; because, perchance, the payment of what he owed to Campbell might not be a bar to the collection of the debt by some administrator acting under a valid appointment; while as a creditor he would be interested in preventing the estate from being involved in a void administration. The question then before us is whether or not the grant of letters to Campbell was void for lack of jurisdiction in the probate court. As said, its jurisdiction is attacked on the assumption that Joseph Edwards left no assets in Pike county at his death, and that administration of the estate of a non-resident can only be granted by a probate court in Missouri when, at the death of the non-resident, there were assets belonging to him in the county. The testimony showed beyond dispute that Joseph Edwards left some property in Pike county when he died. He brought with him to Missouri two trunks and a telescope valise, and these and their contents were left. What their contents were was not shown. He also left a small amount of money. How much no one knows as yet; but his daughter said it was "pocket change." It is evident that the motion to vacate the administration cannot be sustained at present on the score of want of assets. It was filed six days after the grant of letters and before an inventory had been taken to disclose what assets the decedent had left; and this was not shown by other proof. While it is not probable that either the money left or the trunks and valise and their contents, were of considerable value, what their value was remained unknown at the date the motion was filed. Our statutes permit the probate court to refuse letters of administration, when the estate will not exceed the allowance of the widow, widower or minor children. [R. S. 1899, sec. 2.] But as this deceased left no widow or minor children, said section is inapplicable. Possibly administration may be refused if it is apparent that its

cost will be greater than the value of the estate.  As
to this we do not say, because, as suggested, it is im-
possible to state what is the value of the assets left
by the deceased.   In the absence of a statutory pro-
vision on the subject, there is no positive rule of law
that an estate must be of a given value, as a condition
precedent to the grant of letters testamentary.  [11 Am.
and Eng. Ency. Law (2 Ed.), 744; 18 Cyc. 71; Phinney
v. McGregory, 102 Mass. 186.]   We find no cause to
reverse the action taken by the court below on appell-
ant's motion.

The real purpose of the proceeding is to prevent the
administrator from taking steps to collect from Turner
the proceeds of the Ohio property, in order to administer
it for the benefit of Missouri creditors, and the brief of
appellant has assumed that no other property of the
estate, except the money held by Turner, is in Pike coun-
ty, and that this money did not constitute assets justify-
ing the appointment of an administrator because it was
not left there by Edwards at his death.   As we have
seen, the assumption that there was no other property in
Pike county is unwarranted, as Edwards left property
there to be administered; or, if, in fact, too small to
render an administration expedient, sufficient to prevent
a recall of the letters until its value is  ascertained.
Nevertheless if appellant's contention is correct, that
the money held by Turner was not assets to warrant
an administration, it might follow logically that if a
local administration was maintained on account of other
assets, this money would not be subject to said adminis-
tration; and to save further controversy over the matter
it is proper to determine the question.   Our statutes
regarding the administration of estates of non-residents
do not specify the contingencies which will authorize the
granting of letters on such estates.   There is no doubt
that if a non-resident decedent leaves assets in a county
in this State, a local administration is valid.   But a

doubt is raised as to whether this can be done if he leaves no assets, but property of his is subsequently brought into the county. The earlier decisions inclined against the validity of an administration in the latter contingency; but in every instance the real effect of the decision is to be determined by the statute construed. The propositon is generally maintained that an ancillary administration (i. e., one away from the domicile) is void if there are no local assets. [Peters v. Peters, 8 Cush. 543; Thayer v. Winchester, 133 Mass. 447; Crosby v. Leavitt, 4 Allen 410; Phinney v. McGregory, supra; King's Case, 28 D. C. Rep. 529; Wyman v. Halstead, 109 U. S. 654; Jeffersonville, etc., R. R. v. Swayne, 26 Ind. 477.] It is also the law that ancillary administration may be granted before the primary administration is, but that it will extend only to that part of the estate within the jurisdiction granting it. [Stephens v. Gaylord, 11 Mass. 264; Green v. Rugely, 23 Tex. 539.] Therefore if jurisdiction to grant letters in the present case depended solely on assets held by Turner, it would be no objection that Campbell was appointed before there had been an administration granted at the domicile of the decedent in Ohio.

Another proposition is that a foreign administrator cannot sue in this State to collect assets of the estate without first qualifying here. [Emmons v. Gordon, 140 Mo. 490, 41 S. W. 998; Fenwick v. Sears' Admrs., 5 U. S. 259.] Therefore if letters had been granted in Ohio, the administrator appointed in said State could not collect from Turner in Missouri without taking out letters here; that is, an ancillary administration would be necessary in Missouri. It is obvious therefore that in any event no prejudice can result to the rights of any person by allowing the Missouri administrator to collect the assets Turner holds, unless the rules favoring Missouri creditors, provided for by article 13, chapter 1, of the Administration Statutes, are applied to the fund.

But we need not decide, at present, that if Campbell collects from Turner, the assets thus collected will be subject to those rules. The question for decision is whether or not he was entitled to collect, and not how the money shall be disposed of after he has collected it. If it is not such assets as the statutes favoring Missouri creditors cover, then it would be distributed without regard to those statutes; or perhaps transmitted to the Ohio administrator, if one is appointed, to be distributed in accordance with the law of the domicile. This being true, if we say Campbell cannot collect the money, but that an administrator must be appointed in Ohio, take out letters of administration here and then sue Turner, we will impose needless circuity of action and expense.

Recurring to the original point of whether this fund brought by Turner into Missouri immediately after the death of Edwards and held by him, as he says, as the representative of and in trust for the estate, constitutes assets which may be administered here, we will call attention to cases on the subject and point out the statutes on which they rest. In Goodrich v. Pendleton, 4 Johns. Chan. 549, letters granted on the estate of a non-resident of New York City, were held to be void because the statutes invoked authorized letters on the estate of a non-resident only in case he left assets in the city and none were left there. In several Kentucky decisions we find the doctrine declared that assets coming into the State after the death of the deceased do not warrant the grant of letters; that is to say, when the deceased died in another State. [Embry v. Millar, 1 A. K. Marsh. 300; Thumb v. Gresham, 2 Metc. (Ky.) 306.] In Kentucky the courts of probate jurisdiction had power to grant adminstration on the estates of non-residents only in cases where they might take proof of last wills; and local jurisdiction of the probate of wills could not be granted if the testator died outside the State, unless he left assets in the county where the will was offered.

for probate. This provision was construed to mean assets left there at the death of the decedent and not at the date of the application for letters. It is worthy of remark that this statute and the decisions on it, all relate to instances where the decedent died outside of Kentucky. We have a statute providing for the grant of letters testamentary in the county where the decedent died, provided he had no mansion house or place of abode, or was not possessed of lands. [R. S. 1899, sec. 4.] But this statute may relate solely to the estates of residents of Missouri. In Grimes v. Talbot, 14 Md. 169, under a statute providing that the Orphans' Court could grant letters testamentary when a person died in the county intestate, leaving an estate in the State of goods and chattels, it was held necessary to prove he left an estate at his death. In Jeffersonville, etc., R. R. v. Admr., 26 Ind. 477, the statute construed provided *inter alia,* that if a non-resident of Indiana died leaving assets, letters might be granted. The court said there was no jurisdiction to grant letters if the non-resident left no assets in the State where he died and none came in afterwards. There is a New York case on the subject, but it does not help because the New York statute expressly authorized administration on estates of non-residents if any assets were brought into the State after the death of the testator. [In re Hughes, 95 N. Y. 55.] On a similar statute the law is declared the same way in Maine. [Saunders v. Weston, 74 Maine 85.] In Wright v. Beck, 10 Smedes & M. (Miss.) 277, 280, the Mississippi statute construed, provided for the grant of letters in the county where the decedent died or wherein his estate, or the greater part of it, was. This was held to mean the estate left at the date of his death. But in that case the decedent died outside of Mississippi. We call attention to this fact without saying whether or not it would be pertinent under our statutes. The rule given in 11 Am. and Eng. Ency. Law (2 Ed.), 762,

Turner v. Campbell.

763, is that the grant of letters is warranted if assets are in the jurisdiction when the application for letters is made. In 8 Cyclopedia Law and Procedure, 72, it is said that the old rule requiring the property to be in the jurisdiction at the death of the decedent, has been abandoned in modern times out of consideration for creditors and others interested in the estate, and local administration upheld if there are *bona notabilia* in the jurisdiction when letters are applied for, though the goods came in after the death. Some of the cases referred to to support this text, including the one from New York cited supra, are not in point because of statutes warranting letters in such cases. Others of the cited decisions are in point. This is said in 1 Woerner's Administration Law (2 Ed.), p. 442;

"Property brought into the State for collusive purposes, or temporarily, after the owner's death, does not confer jurisdiction to grant administration thereon; but if a debtor voluntarily come to another State, although after the creditor's death, administration may be had in such State at the instance of creditors or other persons interested."

This passage means that the coming into the State of a debtor of the decedent gives jurisdiction to administer on the debt.

The question was most thoroughly considered, perhaps, in Phinney v. McGregory, supra, in a Massachusett statute regarding the granting of letters testamentary, not materially different from our own. The property supposed to confer jurisdiction on the court which had granted the letters, was a debt, the debtor having removed into Massachusetts from Connecticut after the demise of the decedent. The deceased had left a trunk and some other property in Massachusetts at his death, just as Edwards did, and the opinion, after holding that no particular value of assets was fixed by law as requisite for the grant of letters, waived this trifling property

as a source of jurisdiction and proceeded to plant the right to grant letters on the fact that the debtor resided in the county in Massachusetts where letters were granted at the time of the grant. It is to be observed in explanation of this ruling, that the situs of a debt belonging to an estate is, for administration purposes, the residence of the debtor. [Becraft v. Lewis, 41 Mo. App. 546, and cases cited in the opinion.] It was held that the transfer of the debt into Massachusetts by the removal of the debtor to said State after the death of the creditor, was sufficient to afford the probate court of said State the right to grant letters. The court thus stated the statute:

"Our statute declares that 'the probate court for each county shall have jurisdiction of the probate of wills, granting administration of the estates of persons who at the time of their decease were inhabitants of or resident in the county, and of persons who die without the State, leaving estates to be administered within such county.' [Gen. Sts., c. 117, sec. 2.] It does not in terms say 'leaving estates in such county at the time of their decease.' "

The opinion, which was prepared by Justice GRAY, after saying the statute should receive a liberal construction to enable foreign creditors to collect debts from the deceased, proceeded as follows:

"Before the statute, the probate courts of the Commonwealth exercised the jurisdiction of granting administration on property belonging or debts due to persons residing abroad, in order to enable them to be collected in this State, because without such appointment no suit could be brought in our courts for the assets or debts of the deceased, either in the courts of the Commonwealth or of the United States. [Goodwin v. Jones, 3 Mass. 514; Stevens v. Gaylord, 11 Mass. 256; Picquet v. Swan, 3 Mason 469; Noonan v. Bradley, 9 Wallace 394.] In Dawes v. Boylston, 9 Mass. 337, and Wheelock

v. Pierce, 6 Cush. 288, it seems to have been assumed that a debtor or goods of the intestate coming or being brought into the Commonwealth after the death of the testator would give jurisdiction to support an administration. The dictum of Mr. Justice BIGELOW in Bowdoin v. Holland, 10 Cush. 18, that 'it is undoubtedly true that if the deceased had at the time of his death neither domicile nor assets within the Commonwealth, the judge of probate had no jurisdiction in the premises,' is not to be taken in its strictest sense. It was there held that prima facie evidence that a deceased non-resident had conveyed real estate in this Commonwealth in fraud of his creditors was sufficient to warrant the grant of administration here, even if no similar grant had been made in the State of his domicile; and the question asked by the learned judge upon that point is equally applicable here. 'If the will is never proved in the place of the testator's domicile, and is purposely withheld from probate, have creditors in this State no means of procuring administration on their deceased debtor's estate, and thereby reaching the property here? To limit the power of granting administration to cases in which the goods are or the debtor resides in the Commonwealth at the time of the death of the intestate would be to deny to the creditors and representatives of the deceased, whether citizens of this or of another State, all remedy whenever goods are brought into this State, or a debtor takes up his residence here, after the death of the intestate. The more liberal construction of the statute is necessary to prevent a failure of justice."

In Stearns v. Wright, 51 N. H. 600, the same proposition was presented for decision and was determined in favor of the right to grant letters on assets brought into the State after the death of the decedent. In disposing of the question the court said:

"Had the probate court power to appoint an administrator in New Hampshire? Section 6, chapter 170,

General Statutes, provides that 'probate of the will and granting of administration on the estate of any person deceased shall belong to the judge of probate for the county in which such person was last an inhabitant; but if such person was not an inhabitant of this State, the same shall belong to the judge for any county in which such person had estate.' No one claims that Shattuck, plaintiff's intestate, was an inhabitant of this State. But Proctor was a resident of this county, with his property here, and his administrator here, and the plaintiff was a creditor of Shattuck; and it was claimed, and the jury found, that Proctor had in his possession in this county property or estate of said Shattuck; and if he did not have it at the time of Shattuck's death, it is claimed that he fraudulently obtained it of his administrator, Levi Stearns, in Massachusetts, and that it still belonged to the estate of said Shattuck, and as such is now in the hands of Wright, the administrator of Proctor's estate.

"This was property that Shattuck's creditors were entitled to, and this plaintiff being a creditor of Shattuck, and finding that property in this county, might properly be appointed administrator of such estate in this county. Levy Stearns, the administrator of Shattuck in Massachusetts, may not have chosen to come into this jurisdiction to pursue this property; or if he were disposed to come, but a citizen of our State, being a creditor of said Shattuck, chose to avail himself of that chance to secure his debt, we see no objection to his being appointed under the statute of this State, with a view to aid our own citizens in collecting their debts from property within this jurisdiction belonging to the estates of their debtors. We apprehend that this is a very common practice in this State, and we see no objection to it under the provisions of our statute. If there were any doubt upon that point, it would at least be included among he common law powers of the court,

which it has always held and exercised in this State. [Kimball v. Fisk, 39 N. H. 120; Morgan v. Dodge, 44 N. H. 258.]"

This decsion was followed in Ela's Appeal, 68 N. H. 35. The same doctrine obtains in Alabama. [Robinson v. Robinson, 11 Ala. 947.] In that case the court, in construing the Alabama statute providing that letters may be granted if a person dies without a known place of residence in the State, in any county where the goods, chattels or debtors of the decedent may be, said:

"The doctrine contended for, that the orphans' court has no jurisdiction unless the property was in this State at the time of the death of the intestate, is not warranted either by the terms of our acts previously cited, or by the object to be effected by the law, as the necessity for a representative of the estate, would be the same, whether the property was here at the death of the intestate, or was sent, or as in this case, brought here afterwards."

So it was held in Miller v. Jones, 26 Ala. 247, 259. These cases are to be distinguished from Varner v. Bevel, 17 Ala. 286, wherein the question was not whether assets brought within the State after the death of the decedent warranted letters, but whether, when letters had been granted on the estate in Mississippi where the decedent resided and died, and also in Alabama where he left property, the Alabama administrator had a right to administer on assets brought from Mississippi into Alabama after the death, and after letters granted in Mississippi. It was held he had not. This case is not an authority against Campbell's right to collect from Turner, because no administration has been begun in Ohio. The distinction and the fact on which the foreign jurisdiction depends, are pointed out in 1 Woerner's Administration Law (2 Ed.), *p. 361.

"But it may be that the situs of property is changed after the death of the owner, and before any administra-

tor reduces it into possession. In such case, since every administration operates on such property of the deceased as is at the time of the grant, or shall be at any time during its existence, within the jurisdiction of the court granting the same, the question determining the jurisdiction is whether there is or is not any vacancy in the legal title to the property where and when found. For if goods are once in the legal possession of an administrator duly appointed, they cannot afterward be affected by an administration granted in another jurisdiction to which they may be removed, because there is then no vacancy in the legal ownership; they are, technically, no longer the goods of the deceased, but of the administrator of the jurisdiction from which they were removed. But if the goods have never been in possession of the administrator, although they be removed from the jurisdiction where he might, but did not, take possession of them, an administrator of the jurisdiction to which they are taken may do so, without regard to priority in the grant of the respective administration. Thus, where stage-coaches and stage-horses belonged to a line running from one State to another, it was said that, if there had been different administrators in the two States, 'the property must have been considered as belonging to that administrator who first reduced it into possession within the limits of his own State.' "

According to the doctrine of that excerpt no obstacle existed to the appointment of respondent as administrator in Pike county, as letters never have been granted in Ohio. In Green v. Rugely, 23 Texas 539, 551, the rule was declared in accordance with the Massachusetts doctrine, and administration sustained though the assets were brought into Texas from Alabama after the death of the decedent. In McDonald v. Walton, 2 Mo. 726, a Missouri administrator was appointed years after the death of the non-resident, who, it seems, resided and died in Kentucky. After his death some of his slaves

were brought to Missouri by his widow. The right of the Missouri administrator to sue for these slaves was maintained, but it does not appear that the jurisdiction to appoint the administrator was challenged on the ground that the property was brought to Missouri after the death of the owner. However, that decedent left no assets in Missouri at his death; and there was no jurisdiction to appoint an administrator of his estate unless it was conferred by the fact that the slaves had been brought to Missouri by the widow.

We are cited to McCabe v. Lewis, 76 Mo. 296, as holding that administration cannot be maintained here on the estate of a non-resident, unless he left assets in Missouri at his death. Some intimation of that kind may be found in the opinion, but the case presented no analogy to the present one in its facts. An estate had been finally administered and settled in the State of Louisiana by the widow of the decedent, who afterwards moved to Missouri, and in the latter State another administration was granted on the ground that the widow, in conducting the Louisiana administration, had been guilty of fraud against the estate and, therefore, had assets in her hands belonging to it. The real ground of the decision was that as the administration had been closed and the administratrix had made a final settlement and had been discharged in Louisiana, her administration there could not be questioned by the administrator appointed in Missouri. Neither does McPike v. McPike, 111 Mo. 216, establish the doctrine contended for by the appellant. Said case merely determined that a Missouri administrator could not be charged as such, with the proceeds of the sale and rent of land in Illinois belonging to the decedent, because said lands went to the heirs and not to the representatives of the deceased, and the administrator had not taken their proceeds in his capacity of administrator.

In the present case Turner himself said he was em-

powered to close the transaction with Mrs. Murray and collect the proceeds of the lot sold to her by Edwards, in order that he might settle the estate; that he held the proceeds as trustee for and representative of the estate. If this is true, it ought to be distributed under the care of a court of probate, as the funds of other decedents are. Edwards had made a deed which had been delivered to Mrs. Murray's attorney prior to the death of Edwards; that is to say, there had been a perfect conveyance of the land to Mrs. Murray and she stood as debtor to Edwards for the purchase money. This money was collected by Turner really without lawful authority; for it belonged, not to the heirs, but to the representative of Edwards and was subject to administration at his domicile. It was brought into Missouri immediately after the death of Edwards, but more than a year had elapsed and Turner had done nothing toward paying the debts of the deceased. He had not sought administration in Ohio, which he now contends was the only jurisdiction where it could be granted and inasmuch as the fund could not be collected by an administrator appointed there without an ancillary administration in Missouri, no harm can be done by allowing the present administrator to collect it. Our administration law would be enfeebled by holding that funds thus held are not subject to it. The judgment is affirmed. All concur.