U. V. WYATT, Admr. of the Estate of MARY P.
WILHITE, deceased, Appellant, v. A. W. WIL-
HITE, Jr., Respondent.

**Kansas City Court of Appeals, March 6, 1916.**

1. **MONEY HAD AND RECEIVED: Administrators.** The appoint-
   ment of an administrator must be regarded as a judgment of
   a court of record which cannot be attacked in a collateral
   proceeding, nor invalidated by proof that at the time of his
   death, the deceased was a resident of another county.

2. ————: ————: **Final Settlement.** The final settlement of an
   administrator made in accordance with the statutes, has the
   force and effect of a final judgment, and is binding on all
   parties and may only be set aside for the same reasons and
   in the same time and manner applicable to other judgments
   of courts of record.

3. ————: ————: **Dower.** All the rights of a widow in and to
   her husband's estate, are proper matters to be adjudicated by
   a court having jurisdiction of the estate in the annual and
   final settlement of such estate.

4. ————: **Estoppel.** To constitute an estoppel *in pais*, three
   things are necessary; first, an admission, statement or act
   inconsistent with the claim afterwards asserted and sued on;
   second, action by the other party on the faith of such admis-
   sion, statement, or act; and, third, injury to such other party
   resulting from allowing the first party to contradict or re-
   pudiate such admission, statement or act.

Appeal from Cass Circuit Court.—*Hon. A. A. Whit-
sett*, Judge.

AFFIRMED.

J. F. *Rhodes* and T. N. *Haynes* for appellant.

*Allen Glenn & Son* and *C. W. Sloan* for re-
spondent.

JOHNSON, J.—Plaintiff, as administrator of the
estate of Mary P. Wilhite, deceased, brought this suit

August 6, 1913, in the circuit court of Cass county, to recover certain sums of money due from defendant to his intestate at the time of her death which occurred in Jackson county, July 18, 1910. The petition alleges, in substance, that A. W. Wilhite, Sr., the father of defendant, died in Jackson county, intestate in 1903, possessed of real and personal property in Tulsa, Oklahoma (then Indian Territory); that Mary P. Wilhite, his widow, under the laws in force in the Indian Territory, became the absolute owner of an undivided one-third share of all that property; that afterward and until her death the defendant collected rents from the real estate in the total sum of $4996.11; received as proceeds of sales of such real estate $5587.50, and collected deposits in Tulsa banks belonging to the estate of $1311.50; and that defendant failed to pay over to Mrs. Wilhite her one-third share of those funds or any part thereof except $48.40, which defendant paid to plaintiff after her death. There are other allegations but those referred to suffice to give an understanding of the nature of the pleaded cause which, in brief, may be classified as an action for money had and received. The nature of the defenses interposed in the answer will be disclosed in our statement and discussion of the case.

Plaintiff's intestate was the second wife of Wilhite, Sr., the wife of plaintiff was their daughter, and defendant was the offspring of a former marriage. The present controversy proceeds mainly from the contention that first as administrator of his father's estate and afterward as the agent of the heirs, including the widow, defendant received the proceeds from the rental and sale of the Tulsa real estate and from the personal estate at that place which, so far as the share of the widow was concerned, he wrongfully diverted to the payment of debts of the estate, taxes, expenses for repairs, etc., when he should have paid over to the widow one-third of the gross receipts from

such sources without any such deductions. There is no suggestion in the evidence that defendant converted any funds of the estate to his own use and his defenses are that he properly disposed of the funds that came to him as administrator and afterwards as agent of the heirs; that all the issues tendered by plaintiff are *res adjudicata* and that plaintiff, as administrator of the widow's estate is estopped by her participation in the administration of her husband's estate and her approval of defendant's final settlement therein from asserting that she did not receive her full share.

To condense our statement of facts to the smallest practical compass, we shall concede for argument that during the seven years preceding the death of the widow, defendant had charge of his father's estate, as administrator, and afterwards as agent he made disbursements out of the proceeds he received from the real and personal estate at Tulsa "for taxes, insurance, assessments, repairs and other debts of the estate" and accounted and paid over to the widow one-third of the net proceeds instead of one third of the gross proceeds as he should have done under the laws of the Indian Territory relating to dower.

Defendant was appointed administrator of his father's estate by the probate court of Cass county at the request of the widow who, following the death of her husband, removed to that county from Jackson county, where he had died. He left real and personal property in both those counties and in the appointment of defendant the court found that he was a resident of Cass county at the time of his death.

The appointment of an administrator must be regarded as a judgment of a court of record which cannot be attacked in a collateral proceeding, nor invalidated by proof that at the time of his death the deceased was a resident of another county. [Johnson v. Beazley, 65 Mo. 250; Hadley v. Bernero, 103 Mo. App. 549; Cox v. Boyce, 152 Mo. 576; Seafield v.

Bohne, 169 Mo. 537; Smith v. Young, 136 Mo. App. 65.] This being a collateral proceeding the appointment of defendant as administrator of his father's estate must be regarded as *res adjudicata,* though the court erroneously found the deceased was a resident of Cass county. [Austin's Est. 73 Mo. App. 61; In re Est. of Davison, 100 Mo. App. 263; Connor v. Paul, 138 Mo. App. 16; State v. Schenkel, 129 Mo. App. l. c. 239.]

In his annual and final settlements defendant charged himself with the receipts from the Tulsa estate as well as those from the estate in Missouri, and credited himself with disbursements on account of the estate including those made to the widow and those for taxes, insurance, repairs, etc, on the Tulsa property. These settlements were approved by the court with the consent of the widow who, with her lawyer, appeared at the final settlement and announced her approval and consent that defendant be discharged as administrator. On this occasion, which was in May, 1907, she gave her receipt to defendant for the distributive share of one of the minor heirs for whom she was curatrix. After his discharge, defendant continued in charge of the remaining Tulsa property as agent of the widow and heirs and pursued the same course he had followed during the administration. He collected rents, received the proceeds of sales of property, paid taxes, insurance, expenses of repairs and other such expenses, and then divided the net proceeds among the heirs and widow. She made no protest or complaint, but acquiesced in such disbursements and distributions and died without ever having raised a question about the propriety of defendant's course of dealing with the property.

The law is most zealous in the protection of dower and kindred statutory rights of widows. As is well observed by LAMM, J., in Chrisman v. Linderman, 202 Mo. l. c. 614: "Dower, being a cherished and imme-

diate jewel of the common law, preserved for and presented to us in a statutory setting, all doubts are to be resolved in its favor; courts will not allow the right of dower to be wasted and frittered away in piecemeal by sour or austere constructions, by overnice refinement in gloss. In short, nothing except a plain mandate of the statute, or a statutory command deduced by necessary implication, will suffice to set dower to one side. And this is so because dower, as seen above, keepeth excellent company in the law, to-wit: the company of life and liberty (the three abiding together in favor.) So that, the law lifts the light of a comfortable countenance thereon out of tender regard for the widow.''

But dower and kindred rights of the widow in her deceased husband's personal estate may be conclusively determined and pass into the domain of things unalterably settled by a final judgment rendered by a court of competent jurisdiction just as issues of life and liberty may be finally adjudicated. The principle and rules of the doctrine of *res adjudicata* apply to such rights with the same force as to others.

All of the rights of the widow in and to her husband's estate which were properly brought before the probate court of Cass county in the annual and final settlements of defendant were finally adjudicated since the judgment approving the final settlement was rendered with her consent and was not subsequently attacked by her in a direct proceeding. It is well settled that a final settlement of an administrator made in accordance with the statutes has the force and effect of a final judgment; is binding upon all parties interested and may only be set aside for the same reasons and in the same time and manner applicable to other judgments of courts of record. [Patterson v. Booth, 103 Mo. l. c. 417, et seq.; State ex rel. v. Gray, 106 Mo. l. c. 533; et seq.; Smith v. Young, 136 Mo. App. l. c. 77; Michie v. Grainger, 149 Mo. App. l. c. 304; Murray

v. Roberts, 48 Mo. 307; Woodworth v. Woodworth, 70 Mo. 601; Einstein v. Strother, 182 S. W. 122.]

The rule thus is stated in Patterson v. Booth, supra, l. c. 419: "When the administrator or guardian files his final settlement and gives due notice, the opposing parties may appear and show that the accountant has not charged himself with all the assets belonging to the estate, and may dispute the correctness of the credits. Matters which properly enter into this accounting should be regarded as settled by the final adjudication of the probate court; but it is equally clear that matters which are only collaterally introduced, and matters not properly entering into the accounts, and also matters over which the probate court has no jurisdiction, are not concluded by the final settlement."

Counsel for plaintiff contend that the widow's interest in the Tulsa property was not properly an issue before the probate court and therefore was not adjudicated by the judgment approving the final settlement.

The laws of Arkansas which were in force in the Indian Territory at that time provided that "a widow shall be endowed of the one-third part of all the lands whereof her husband was seized of an inheritance at any time during the marriage" . . . that "until the widow's dower be apportioned, the court shall order such sum to be paid to her out of the rent of the real estate as shall be in proportion to her interest therein" . . . and that "a widow shall be entitled as part of her dower absolutely and in her own right to one-third part of the personal estate . . . whereof the husband died seized and possessed." [See Mansfield's Digest of Ark., ch. 53.]

The Supreme Court of Arkansas in construing the provision relating to the widow's share in the personal estate held that she has the right to receive as her own absolute property one-third of the personalty and that

such right being superior to that of creditors and independent of the administration, she is not a proper party to the administrator's settlements and "orders made by the court in the course of the administration, although made in reference to property out of which her dower is to be carved, are void as to her, like the judgments of other courts acting without the jurisdiction of the parties." [Crowley v. Mellon, 52 Ark. 1.]

But we are not concerned in this case with the laws in the Indian Territory controlling the descent of personal property. At common law the succession of personal property was governed exclusively by the law of the domicile of the intestate at the time of his death and this rule has long been recognized in the statutory laws of this State (sec. 260, R. S. 1909) and the reported decisions. [Richardson v. Lewis, 21 Mo. App. 531; Austin's Estate, 73 Mo. App. l. c. 66; Comerford v. Coulter, 82 Mo. App. .362.] It was also the rule in the Indian Territory. [Gibson v. Dowell, 42 Ark. 164.] When defendant took charge of the personal property at Tulsa and brought it or its proceeds to this State, it was proper for him to charge himself with it as a part of the personal estate to be administered and distributed according to the laws of this State.

The probate court had jurisdiction over the subject-matter of the widow's share; she was a proper party to the proceeding and when, as such party, she appeared in court on the hearing of the final settlement and consented to its approval, she became bound by the adjudication and neither she nor, after her death, her administrator, could be heard to attack that judgment in a collateral proceeding.

The descent of real property is governed by the laws of the State or country where the property is situated and in this case the dower rights of the widow in the Tulsa real estate were to be dealt with and disposed of according to the laws in force in the Indian

Territory. Defendant, as administrator of the deceased husband's estate appointed by the probate court of Cass county, had no authority to take charge of that property and dispose of the proceeds of the widow's dower rights therein. In collecting the rents, paying taxes, insurance and other like debts and expenses he acted in his personal capacity as agent of the widow and heirs and became their trustee of the proceeds charged with the duty of making proper distribution thereof among the beneficiaries. It may be conceded that it was his duty under the laws of the Indian Territory to pay over one-third of the gross receipts from rentals and sales to the widow, but with her knowledge and consent, he paid her one-third of the net proceeds after deducting disbursements necessarily incurred in the proper care and preservation of the whole estate. It is not necessary to discuss the question of whether he could bring such proceeds and the rights their proper distribution involved within the jurisdiction of the probate court of Cass county as he endeavored to do by charging himself with them in his settlements. We may grant, for argument, that no such jurisdiction was conferred upon that court and that the judgment approving the final settlement cannot be regarded as an adjudication of the widow's rights. [Grady v. McCorkle, 57 Mo. 172; McCreary v. Lewis, 114 Mo. 582.]

But with these concessions which eliminate, for argument, the defense of *res adjudicata* as to the dower rights in the Tulsa real estate, we think the record fully sustains the defense of estoppel. In cases cited by plaintiff, e. g. Foley v. Boulware, 86 Mo. App. 674; Martien v. Norris, 91 Mo. 465, the widow who, as executrix, or administratrix of her deceased husband's estate, sold his interest in lands but not her dower, was held not estopped from afterwards asserting her claim in the land thus sold. In the Martien case the widow had stated at the sale that "the title was per-

fect and unquestionable'' but the court held that the purchaser could not have understood this statement to refer to the dower interest but only to the title of the decedent. In the Foley case it was held that the deceased husband's, not the widow's, interest in the land was the subject-matter of the sale ''and there was no legal obligation on her to inform a buyer of her right to dower.'' Since the subject-matter of those sales was confined to the interest of the decedent, and the widow had no cause to think the purchaser was acting in the belief that he would acquire the additional dower interest, she was held free from either guile or negligence under the maxim that ''silence without knowledge works no estoppel.''

The case in hand is entirely different. Here the widow for several years with full knowledge of what her agent was doing approved his stewardship and encouraged him to continue the course of dealing with her property. There is nothing to indicate that she was not advised of the nature and extent of her dower rights and with knowledge that the proceeds of her share were employed proportionately to the payment of taxes, insurance, repairs, etc., she sanctioned, from the first, that course of dealing and in practical and legal effect, directed defendant to continue it. She was *sui juris* and had a right to do with her own property as she pleased, and her agent should not be punished for having handled her affairs in a manner known to and approved by her to the day of her death.

Estoppels are not favored and the facts upon which they are predicated should be closely and critically scanned but where it clearly appears that the party against whom an estoppel *in pais* is urged is taking a position inconsistent with his former conduct, and highly injurious to his adversary, he will not be allowed to play fast and loose, to take one position today and its opposite tomorrow and thereby reap an unconscionable advantage. ''To constitute an estoppel

*in pais,"* say the Supreme Court in Bank v. Ragsdale, 171 Mo. l. c. 185, "three things must concur; first, an admission, statement or act inconsistent with the claim afterward asserted, and sued on; second, action by the other party on the faith of such admission, statement or act; and, third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. [Taylor v. Zepp, 14 Mo. 482; Newman v. Hook, 37 Mo. 207; Garnhart v. Finney, 40 Mo. 449; Bank v. Frame, 112 Mo. 502; Johnson-Brinkman Co. v. Railroad, 126 Mo. 344; DeBerry v. Wheeler, 128 Mo. 84.]"

The position of plaintiff, who stands on no better ground than the widow could occupy if she were plaintiff, is wholly inconsistent with her conduct towards defendant, her agent, as we find it depicted in the evidence, and to allow plaintiff to repudiate her attitude and acts and to assert rights for her which she had no intention of claiming for herself, would result in an unjust and grievous injury to defendant. The learned trial judge before whom the cause was tried without a jury did not err in rendering judgment for defendant on the causes of action pleaded in the petition. Since defendant did not appeal from the judgment rendered against him on his counterclaim, that ruling is not before us for review.

The judgment is affirmed. All concur.