In re the ESTATE OF Margaret M. PETTIT, Deceased, Andrew Culbertson and Alex Culbertson, Appellants-Cross-Respondents,

v.

Arnold D. LEVINE, Personal Representative,

William F. Culbertson and Frederick X. Culbertson, Respondents-Cross-Appellants,

Mercantile Trust Company, N.A., Personal Representative.

Nos. 45447, 45621.

Missouri Court of Appeals, Eastern District, Division Two.

July 5, 1983.

Motion For Rehearing/Transfer to Supreme Court Denied Sept. 15, 1983.

Application to Transfer Denied Oct. 18, 1983.

Walter D. McQuie, Jr., Montgomery City, for respondents, cross-appellants.

Dan Bollow, Shelbina, Stephen Hanlon, S. Michael Thomas, Clayton, for appellants-cross-respondents.

DOWD, Judge.

This appeal and cross-appeal stem from an order and judgment of the circuit court of Monroe County, Missouri entered after it first granted respondent's motion to vacate a temporary restraining order which directed the Missouri representative to take possession of certain securities and then ordered the securities returned to the State of Florida for administration and then secondly construed the testatrix's will to include appellants as residuary legatees.

Margaret M. Pettit (hereinafter testatrix) died a resident of Florida on December 17, 1980. Among her assets were the subject of this appeal, namely certain stock certificates, bonds and a bank draft (hereinafter referred to as the securities). Appellants-cross-respondents Alex and Andrew Culbertson are the testatrix's sons and residents of the State of Missouri. Respondents-cross-appellants William F. and Frederick M. Culbertson are also the testatrix's sons and are residents of the State of Florida. At the time of the testatrix's death the securities were located in the State of Florida. On January 2, 1981 Alex and Andrew naming all four sons as heirs filed an application for letters of administration on the testatrix's estate in Missouri representing to the court that their mother had died intestate. These letters were issued on January 5, 1981 appointing Alex and Andrew as administrators. Alex and Andrew then proceeded to the State of Florida, took possession of the securities and returned them to Missouri. Although they claim to have removed the securities on January 15, 1981, the record reflects through Andrew's own testimony that the securities were removed on Friday of the week in question which was January 16, 1981.

On that same date the testatrix's will was admitted to Probate and a petition for administration filed in Pinellas County, Florida by Arnold D. Levine (hereinafter Levine), and letters were issued to him that same day. This proceeding named only William and Frederick as beneficiaries under the will.

Thereafter, upon learning that the securities were in Missouri, Levine instituted an action in replevin and for injunctive relief in Hillsborough County, Florida. As a result, on February 17, 1981, the court issued a mandatory injunction ordering Andrew and Alex to return the securities to Levine. Also on this date the Missouri court, upon learning of the testatrix's will, revoked the letters previously issued to Alex and Andrew. That court then appointed the Mercantile Trust Company National Association as the Missouri personal representative.

Alex and Andrew were served with the February 17, 1981 injunction on March 4, 1981 and on March 5, 1981, without informing the Missouri court of this Florida court order, sought and received an order from the Missouri probate court directing that the securities remain in Missouri.

On March 26, 1981 the Florida court held Alex and Andrew in contempt for their continued refusal to obey the court order and return the securities to Levine. The Hillsborough County replevin action and the Pinellas County estate action were then joined and Alex and Andrew both in person and by their attorney appeared and participated in the trial on the question of the proper person to possess the securities. The issue concerning the testatrix's domicile was tried on August 24, 1981. On August 7, 1981 the Florida court entered its judgment and found that Levine was entitled to possession of the securities which had been removed from the State of Florida on January 16, 1981, and entered a mandatory injunction reaffirming the February 17, 1981 injunction. Levine was also granted summary judgment on his petition for determination of beneficiaries finding William and Frederick the sole residuary legatees intended under the will. Andrew and Alex appealed these judgments to the District Court of Appeals in Florida and they were dismissed for their continued failure to comply with the court order directing them to return the securities.

On January 18, 1982, cross-motions for summary judgment were heard in the probate court in Monroe County, Missouri, on the issues relating to the rightful possession of the securities and the determination of beneficiaries under the will. Based on the voluminous record accumulated in the Florida proceedings, the Missouri lower court entered first, a judgment stating that the August 7, 1981 Florida court judgment was entitled to full faith and credit, that the previous order directing the securities remain in Missouri be dissolved, and that the securities be returned to Levine in Florida. Alex and Andrew appeal from this portion of the judgment. The court then proceeded to construe the will and entered an order finding that Alex and Andrew were intended as residuary legatees under the will.[1] William and Frederick cross-appeal from this portion of the judgment.

We will first address Alex and Andrew's appeal wherein they set forth two points for our consideration, claiming in essence that the Florida judgment requiring that the securities be returned to Florida was not entitled to full faith and credit and that the Missouri court and not Florida is the proper place with jurisdiction to administer the securities. We disagree and hold that the Florida judgment was entitled to full faith and credit and that the Missouri court was without jurisdiction to administer the securities as the proper jurisdiction lay in Florida.

Alex and Andrew cite several cases for the proposition that the situs of personal property at the date letters of administration were issued affixes movable property to a specific jurisdiction, and if such property is moved before letters are issued so as to give a local personal representative a right to possession, the situs of the property for purposes of probate administration moves also. *Turner v. Campbell,* 124 Mo.App. 133, 101 S.W. 119 (1907); *Wyatt v. Wilhite,* 192 Mo.App. 551, 183 S.W. 1107 (1917).

▮ We are presented with a difficult factual situation in this case with little or no case law to support either appellants' or respondents' contentions. However, the record before us does reflect several facts which persuade us to believe that Florida is the proper forum to administer the securities in question. First, it is undisputed the securities were in Florida on the date of the testatrix's death. Secondly, Andrew's own testimony reveals that the securities were removed on Friday of the week in question which was January 16, 1981. This clearly refutes Alex and Andrew's argument that the securities were removed on January 15, 1981, and establishes the fact that, as letters were issued to Levine on January 16, 1981, the situs of the property for proper administration is the State of Florida. Alex and Andrew's argument seems to concede that if administration proceedings had begun, the correct situs would be Florida. We cannot find to the contrary. Section 473.671 RSMo 1978 provides that jurisdiction over debts, rights and choses in action embodied in legal instruments lies in the situs where such legal instruments are located. While this statute fails to indicate whether situs at the time of death or situs at the time administration proceedings are instituted will control, it clearly recognizes the right of a foreign state to administer assets found within its borders. As letters were issued to Levine on January 16, 1981, when the securities were still in the State of Florida and we need not decide whether § 473.671 RSMo 1978 intended the situs at the time of death to control. Therefore, the Missouri court correctly decided Florida was the proper forum in which to administer the securities.

▮ Furthermore, we also hold that the August 7, 1981 Florida judgment finding that Alex and Andrew removed the securities on January 16, 1981 and ordering them returned to Florida, was entitled to full faith and credit under U.S.Const., Art. IV, § 1. This section precludes any inquiry into the merits of the cause of action, the legal consistency of the decision, or the validity of the legal principles upon which the judgment is based, and requires Missou-

---

1. The residuary clause consisted partly of real    estate located in Missouri.

ri courts to give full faith and credit to judgments of the courts of sister states unless it can be shown that there was a lack of jurisdiction over the subject matter, failure to give due notice, or fraud in concoction of the judgment. *O'Neill v. Winchester,* 505 S.W.2d 135, 136 (Mo.App.1974); *Gibson v. Epps,* 352 S.W.2d 45, 47 (Mo.App. 1961).

█ It is well settled that a judgment rendered by a court of a sister state is presumed, absent any showing to the contrary, to be a judgment wherein the court not only had jurisdiction over both the parties and over the subject matter, but also that the court followed its laws and entered a valid judgment in accordance with the issues made in the case. *McDougal v. McDougal,* 279 S.W.2d 731, 739 (Mo.App. 1955).

█ While appellants contend that at no time during any Florida proceeding were the securities outside the territorial limits of Missouri, there is no question in this case that the Florida court had the jurisdiction to enter the judgment. As previously established, there is sufficient evidence to support the finding that the securities were still in Florida on the same day those administration proceedings were commenced, thus giving Florida the requisite jurisdiction. The fact that Alex and Andrew removed the securities to Missouri did not divest the Florida court of its jurisdiction. *Hill v. Barton,* 194 Mo.App. 325, 188 S.W. 1105 (1916). Once a court acquires jurisdiction, it is not divested by subsequent events over which a plaintiff or petitioner has no control. *See Rouse v. Bank of Darlington,* 41 S.W.2d 159 (Mo.1931); *Mann v. Bank of Greenfield,* 323 Mo. 1000, 20 S.W.2d 502 (1929).

█ Alex and Andrew also contend that the Florida court had no jurisdiction upon which to base its judgment since Mercantile Trust, which was appointed the Missouri personal representative after the Florida proceedings were instituted, was not a party to those proceedings. We find this argument to be without merit. We note that it is Alex and Andrew who actively participated in those proceedings that now contest its force and effect. Mercantile Trust, while the custodian of the securities and a party to the present action, does not seek to avoid the Florida judgment. Moreover, Mercantile Trust in a motion to the Missouri court agreed that the Florida judgment was binding under the full faith and credit clause and moved the court to dissolve its temporary restraining order and direct the securities returned to Florida. Alex and Andrew cannot avoid the Florida judgment by complaining on behalf of Mercantile Trust when Mercantile itself has elected not to contest the judgment. Whether Mercantile would otherwise be bound we need not decide here.

█ Finally, Alex and Andrew cannot now seek to relitigate issues in Missouri which were fully adjudicated in the Florida proceedings where they personally and through their attorneys appeared and actively participated. As such, we find Alex and Andrew are barred from challenging the findings and effect of the Florida judgment by the principles of res judicata and collateral estoppel regardless of whether Mercantile Trust was a party. *See Prentzler v. Schneider,* 411 S.W.2d 135 (Mo. banc 1966); *Norwood v. Norwood,* 353 Mo. 548, 183 S.W.2d 118, 123 (1944); *LaRose v. Casey,* 570 S.W.2d 746 (Mo.App.1978).

█ It is well settled that final judgments of probate courts in matters within their jurisdiction are as conclusive as those of courts of general jurisdiction. The judgment dated August 7, 1981 purported to determine the person rightfully entitled to possess the securities. Assuming that all proceedings were regular on the face of the record, the judgment was conclusive and binding upon the parties thereto. *State ex Inf. Kell v. Buchanan, et al.,* 357 Mo. 750, 210 S.W.2d 359, 361 (1948). We cannot find the Florida judgment invalid when Mercantile was not a party to the Florida proceedings, and, more importantly, does not contest the Florida judgment in the present proceedings.

Accordingly, the lower court did not err in affording full faith and credit to the judgment in question and the securities were properly ordered returned to Florida. Judgment affirmed.

The Missouri's lower court's judgment also purported to construe the testatrix's will which was submitted for probate in Florida on January 16, 1981, and in Missouri on February 19, 1981. It is from the Missouri court's interpretation of said will that William and Frederick cross-appeal. The pertinent provisions of the testatrix's will read as follows:

ARTICLE TWO: I give and bequeath all of my automobiles, household furniture and furnishings, pictures, jewelry, watches, wearing apparel and all other articles of household or personal use or ornament which I own at my death *to my children, William F. Culbertson and Frederick W. Culbertson* (hereinafter referred to as *"my children"*) living at my death (or all to the survivor), to be divided among them or my exectur [sic] as fairly as possible having due regard for their personal preferences. There shall be no adjustment among my children in the event that one shall receive under this provision property of greater value than another.

ARTICLE THREE: I devise and bequeath all of my residuary estate, being all property wherever situated in which I may have any interest at the time of my death not otherwise effectively disposed of, including all lapsed legacies and devises by reason of the prior death of the beneficiaries or for any other reason, per stirpes, *to my descendants who survive me.*

ARTICLE SIX: The term *"my descendants" shall mean my children* and their lineal descendants by blood or adoption. [Emphasis ours].

Again, the testatrix, Margaret Pettit, died a resident of Florida. The will was duly admitted to probate in the State of Florida and summary judgment granted on the Florida Representative's petition for determination of beneficiaries finding respondents William and Frederick Culbertson the sole residuary legatees intended under the will. Alex and Andrew Culbertson were not present but were represented by counsel. Thereafter, cross-motions for summary judgment were heard in the State of Missouri and the trial court construed the will as follows:

1. ARTICLE TWO gives all automobiles, household furniture and furnishings, pictures, jewelry, watches, wearing apparel and all other articles of household or personal use or ornament to WILLIAM F. CULBERTSON and FREDERICK W. CULBERTSON.

2. ARTICLE THREE gives all of the residuary estate per stirpes to my descendants who survive me. The surviving descendants are: WILLIAM F. CULBERTSON and FREDERICK W. CULBERTSON, ANDREW CULBERTSON and ALEX J. CULBERTSON.

3. ARTICLE SIX: defines "my descendents" as my children. The children are four: William F. Culbertson, Frederick W. Culbertson, Andrew J. Culbertson, and Alex J. Culbertson.

IT IS THEREFORE ORDERED AND ADJUDGED: That the *residuary clause of the will shall include all four of the aforementioned children of the deceased,* and the duly appointed Missouri executor, the Mercantile Trust Company, St. Louis, Missouri, shall be guided by and act according to this construction in its administration and distribution of the assets of this estate that are under the jurisdiction of this court. [Emphasis ours].

As this appeal is from a court tried case, we will review the case upon both the law and the evidence, and the judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). William and Frederick set forth for our consideration four points on appeal. However, their second point illustrates the basic problem presented here of whether the Mis-

souri court had the jurisdiction to construe a will contrary to an already existing Florida judgment, and, if so, whether the court properly· applied the law in its interpretation of said will.

■ It is well established in Missouri that the construction of a will for the purpose of ascertaining the testator's intent is governed by the law of the testator's domicile when the will was executed whether it disposes of personalty or realty. *Applegate v. Brown,* 344 S.W.2d 13 (Mo.1961); *Zombro v. Moffett,* 329 Mo. 137, 44 S.W.2d 149 (1931); *Bernheimer v. First National Bank of Kansas City,* 359 Mo. 1119, 225 S.W.2d 745 (1950). This rule is based upon the presumption that the maker of a will is more familiar with the law of his domicile than with the law of other jurisdictions and that the will is written with the law of his domicile in mind. *Zombro v. Moffett,* 44 S.W.2d at 152. In the instant case there is no question that the testatrix Margaret Pettit was a resident of Benton County, Missouri at the time she executed the will and that therefore Missouri law controls its construction and interpretation.

The sole question before us is whether the Missouri Court properly applied the law.

■ The controlling rule in construing wills in this state, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testatrix gathered from the entire instrument and not some isolated segment thereof. *Ussher v. Mercantile Trust Co.,* 328 S.W.2d 699, 702 (Mo.1959); *First National Bank of Kansas City v. Danforth,* 523 S.W.2d 808, 816 (Mo. banc 1976); *also see* § 474.030 RSMo 1978.

■ Clearly, the function of a trial court is to construe ambiguous provisions of a will, and not to reconstruct a will it has already determined is unambiguous [2] and in effect write a new will for the decedent under the guise of construction.

■ As such, the threshold question before us is simply whether or not the tes-

tatrix intended to omit Alex and Andrew Culbertson from the subject will. Alex and Andrew set forth several arguments contending that read separately, the provisions of the will indicate they were also intended as residuary legatees. We disagree. As previously noted, in ascertaining the testatrix's intent, Missouri law requires us to give effect to said intent as revealed in the will as a whole. *Ussher v. Mercantile Trust Co.,* 328 S.W.2d at 702. Article two devises several items to William and Frederick and then proceeds to define them as "my children." Article three purports to devise the residuary estate to her "descendants." These two provisions alone do not clearly illustrate the testatrix's intent and could be interpreted to include Alex and Andrew. However, Article six is definitional in effect and clearly states that the term "my descendants" shall mean "my children" whom we note the testatrix had previously defined in Article two as William and Frederick. It seems clear that as Alex and Andrew were never mentioned, the testatrix intended to omit them and specify William and Frederick as the only children eligible to take under the will. Although the will was inartfully drafted, we believe all three provisions read together clearly express the testatrix's intent. While we do not necessarily condone the exclusion of heirs from an estate, and while there does exist a presumption against disinheritance, the failure to follow such a presumption does not cloud or override the fact that the testatrix's intent is the controlling factor. *See In Re Garrison's Estate,* 374 S.W.2d 92, 94 (Mo.1964); *In re Just's Estate,* 618 S.W.2d 208, 214 (Mo.App.1981).

■ It is neither the probate court's nor this court's function to rewrite a poorly drafted will in order to effectuate a more equitable distribution or to impart an intent to the testatrix that is not expressed in the will. *In Re Estate of Stengel,* 557 S.W.2d 255, 259 (Mo.App.1977); *Magruder v. Magruder,* 525 S.W.2d 400, 404 (Mo.App.1975).

**2.** In its order the court purported to construe the will according to its "plain meaning."

■ Finally, we note that if we had found the subject will to be ambiguous, said ambiguity is latent and the court was authorized to consider parole evidence regarding the testatrix's declarations of intent. Such evidence is admissible to resolve a latent ambiguity as for instance in this case concerning the identity of a beneficiary. See *Breckner v. Prestwood*, 600 S.W.2d 52, 56 (Mo.App.1980); *American Cancer Society, Missouri Division, Inc. v. Damon Runyon Memorial Fund for Cancer*, 409 S.W.2d 222, 223 (Mo.App.1966).

■ The record reveals the testatrix drafted four separate wills, one in 1965, 1968, 1974, and 1980.[3] In all four wills she never referred to Alex or Andrew and specifically designated William and Frederick as her "beloved children". Moreover, Hyman Gratch, the testatrix's attorney also testified that during this fifteen year period the testatrix omitted any express reference to Alex or Andrew, that she did not express any desire to alter the beneficiaries in the 1974 will and that she did not direct the inclusion of Alex and Andrew as "my children" in the subject will. We believe the four wills coupled with Gratch's deposition testimony constituted overwhelming evidence of the testatrix's true intent.

We therefore find it was the intention of the testatrix, Margaret M. Pettit, that her estate be distributed to William and Frederick Culbertson and that the Missouri court erroneously applied the relevant case law in its construction of said will. Summary judgment should have been granted in favor of William and Frederick Culbertson. The judgment is affirmed as to the original appeal and as to the cross-appeal reversed and remanded for entry of judgment in accordance with this opinion in favor of William and Frederick.

SNYDER, P.J., and GAERTNER, J., concur.

**3.** The 1980 will was never executed as the   testatrix died before signing it.