CHARLES H. HILL, Appellant, v. CELIA BARTON, Executrix of the Estate of HENRY BARTON, Deceased; SAM B. STROTHER, Administrator of the Estate of HENRY BARTON, Deceased, and BYERS BROTHERS & COMPANY, a Corporation, and BYERS BROTHERS & COMPANY LIVE STOCK COMMISSION CORPORATION, Respondents.

Kansas City Court of Appeals, July 3, 1916.

1. JURISDICTION: Right to Sue Foreign Executor: Texas Statute: Administration in Texas Independent of Probate Court. Under a Texas statute giving a testator power to provide that his executrix may settle his estate independent of the probate court, a testator in Texas gave his executrix that power, so that, under the law as construed by the Texas courts, the executrix could be sued in any court of competent jurisdiction. Such executrix thereafter took charge of cattle in Texas belonging to the estate and in due course of business shipped them to Missouri for sale on the market by a mortgagee who was to pay off the mortgage and remit the balance of the proceeds to the executrix. The cattle were sold on the market in Missouri and the mortgage paid off, but a creditor sued the executrix by attachment in Missouri and garnisheed the balance of the proceeds left after payment of the mortgage. *Held*, that the suit was properly dismissed by the trial court.

2. ———: ———: ———: ———: Appointment of Ancillary Administrator. The title to the property being in the Texas executrix before it came into this State, and it being brought here for lawful purposes, in keeping with executrix's duty under the law in Texas, and not wrongfully brought here to be con-

verted to executrix's own use, there was no vacancy in the title to the property which would authorize the appointment of an administrator in Missouri, and hence no authority in the court to order the property turned over to an administrator appointed in Missouri.

3. ———: ———: ———: ———: It does not follow that because, under Texas law, a suit could be brought in that State against the executrix in any court of competent jurisdiction, this authorizes a court in Missouri, and proceeding under Missouri law, to maintain a suit against the executrix. So far as Missouri law is concerned, it does not recognize or give validity to the appointment of an executor in a foreign State. His powers stop at the boundaries of the State in which he is appointed. He cannot, in his official capacity, originate or maintain in the courts of any country, save that which granted him letters testamentary or of administration, without authority from the country in which he brings the action. The strict correlative of this proposition is that no executor or administrator can be subjected to an action, in his official capacity, in the State or county in which he is not recognized as such.

4. ———: ———: ———: ———: To say that when an executrix has shipped property of the estate to another jurisdiction for sale on the market a creditor in the latter jurisdiction can either attach it or have an ancillary administrator appointed and the property taken away from the first administrative officer to satisfy that creditor's demand, when there is nothing to prevent the creditor from enforcing his claim in the State where the property and the demand originated, is to open the door to much confusion and to disregard the territorial limitations heretofore recognized as existing upon the powers and liabilities of executors and administrators. The results likely to follow are much too high a price to pay merely to accommodate the *convenience* of a creditor who prefers to sue in his home forum.

5. ———: ———: Property under administration: Attachment. By the clear intent of our law attachment is not available against property belonging to an estate in process of administration.

6. ———: Want of for lack of Summons: Motion to Dismiss: Special Appearance Becomes General when Motion not Confined to Absence of Service. Waiver. Where the objection to jurisdiction raised by a motion to dismiss is not the lack of jurisdiction under the law, but because of the absence of summons, such motion, if not confined to that objection but extends to other matters and attacks plaintiff's right to prevail because of them, is a waiver of the lack of summons, and constitutes an entry of general appearance even though the motion says the appearance is special only.

7. ———: ———: ———: ———: ———. Whenever a litigant appears to deny jurisdiction over his person, which would other-

wise exist but for the failure to pursue the methods prescribed by law for bringing him into court, he must confine himself to that particular branch of jurisdiction.

8. ———: ———: ———: ———: ———. The rule that a defendant can unite in the same pleading a plea to the jurisdiction, as to the person as well as to the subject-matter, with a plea to the merits, and that he does not thereby waive the question of jurisdiction, has reference to where the objection to the jurisdiction is that there is none under the law and not to the want of jurisdiction because of the mere insufficient service of a summons in a case in which the court had jurisdiction upon a proper service of the writ.

Appeal from Jackson Circuit Court. *Hon Frank G. Johnson*, Judge.

AFFIRMED.

*Watson, Gage & Watson* for appellant.

*Deatherage & Guthrie* and *Goodwin Creason* for respondents.

TRIMBLE, J.—As originally instituted, this suit was brought against Celia Barton as executrix of the will of Henry Barton, deceased. It was alleged that, at the times mentioned in the petition, Henry Barton was a non-resident of the State of Missouri, and that his executrix, Celia Barton, is a non-resident; that, during the lifetime of Henry Barton, plaintiff rented to him certain land in the State of Texas which he occupied for several years but failed to pay the rent; that when a controversy arose as to the amount Barton should pay for the use of said land, the matter was left to arbitrators who made an award of $300 in plaintiff's favor for the use of the land up to and including the year 1911; that thereafter Barton continued to use the land during the years 1912 and 1913 at an agreed rental of $75 per year, making an additional $150 due plaintiff for rent, and making, in the aggregate, the sum of $450 due plaintiff for which judgment was asked. A second count alleged that plaintiff was the owner of certain land in Texas upon which was

located a windmill of the value of $125 which was removed by said Henry Barton and never returned, and judgment was asked for this additional amount making, in the aggregate, $575 for which judgment was prayed.

Plaintiff filed with his petition an affidavit alleging non-residency as a ground of attachment, and, thereupon, an attachment writ was issued and garnishment was served upon Byers Brothers & Company and all money in the hands of the garnishee belonging to said Celia Barton as executrix was levied upon and attached. No service of the writ was made upon Celia Barton.

Thereafter, Celia Barton as executrix "appearing for the purpose of this motion only and for no other purpose" filed a motion to dismiss. This motion set up certain facts whereby it was claimed that the court, in an attachment and garnishment suit, had no jurisdiction over the property attached, or power to render any judgment affecting it; and also asserted that the court was without jurisdiction because no personal service had been had upon her, the said executrix. As this motion was not acted upon, it is needless to set out the facts alleged, especially as they are practically the same facts stated in another motion to dismiss filed against the second amended petition as hereinafter set forth.

Thereafter, plaintiff, as a creditor of Henry Barton, deceased, appeared in the probate court of Jackson county, Missouri, and obtained an order directing Strother, public administrator of said county, to take charge of Henry Barton's estate located in Missouri. Henry Barton left no property in Missouri, and the only property which could, in any view, be regarded as belonging to his estate was whatever money might be in the hands of the garnishee, Byers Brothers & Company. After the probate court had acted, plaintiff filed a first amended petition making Strother, as administrator of Henry Barton, deceased, a party defendant along with Celia Barton, executrix. This amended petition alleged the same facts as the first except it contained an allegation that Strother, Public Adminis-

trator of Jackson county, had been appointed ancillary administrator of the estate of Henry Barton, deceased. Plaintiff then filed interrogatories to the garnishee, Byers Brothers & Company, and it answered saying it did not have any money in its hands belonging to Celia Barton individually or as executrix; and that it did not owe Celia Barton, or Celia Barton as executrix, any money except that Henry Barton and W. H. Hopkins, partners, owned certain cattle in Texas on which they gave a chattel mortgage to secure an indebtedness to garnishee; that subsequently Henry Barton died leaving his widow, Celia Barton, who was appointed his executrix in Texas where Barton resided; that said cattle were shipped by Hopkins and said executrix from Texas to said garnishee and were sold and the proceeds applied to the payment of the chattel mortgage, leaving in garnishee's hands a balance of $800 which it held subject to the order of the court, but it did not know how much of said money belonged to said Hopkins nor how much to Celia Barton as executrix nor how much to the partnership of Barton & Hopkins. Plaintiff filed no exceptions to or denial of the facts alleged in garnishee's answer.

Plaintiff filed a second amended petition making Byers Brothers Company, and Byers Brothers & Company Live Stock Commission, additional parties defendant. This petition alleged that Henry Barton formerly resided in Hemphill county, Texas, and became indebted to plaintiff as hereinafter stated, and the said Henry Barton died there in January, 1914, leaving a will in which he bequeathed his property to Celia Barton, and directed therein that no other action could be brought in the county court of Hemphill county in relation to the settling of his estate other than the probating and the recording of the will, return of inventory, appraisement and lists of claims against the estate; that this direction in the will was made pursuant to Article 3362, Laws of the State of Texas of 1911, providing that, "any person capable of making a will may provide in his will that no other action can be had in the county court in the relation of the

settling of his estate, than the probating and recording of his will and return of inventory, appraisement and list of claims of his estate.''

Said second amended petition further alleged that Henry Barton left property in the State of Kansas consisting of a large number of cattle, and that defendant Celia Barton took possession thereof and removed the same to Missouri, and sold them through the defendants, Byers Brothers & Company and the Byers Brothers & Company Live Stock Commission, who owe said Celia Barton the purchase price and now have same in their possession, and who have refused to turn said proceeds over to Strother, the Missouri ancillary administrator; that at all times mentioned in the petition, both Henry Barton and Celia Barton were non-residents of the State of Missouri; that under the laws of the State of Texas, plaintiff has the right to sue the estate of Henry Barton, deceased, in any court of competent jurisdiction, and under the Texas law plaintiff is prohibited from presenting his claim to the county court, which has probate jurisdiction under the laws of the State of Texas.

Said second amended petition then alleged the renting of the land by plaintiff to Henry Barton up to and including the year 1911, and the awarding of $300 therefor by the arbitrators as stated in the original petition; that said Barton never paid the award; that said Celia Barton as executrix of his estate is indebted to plaintiff in the amount, for which judgment was asked. Plaintiff further prayed the court to ascertain the extent of the interest of Henry Barton in the cattle shipped and the amount of money due from the proceeds thereof to said Celia Barton, executrix, and to give such further relief as equity and good conscience required.

For a second count, the petition adopted the general facts stated in the first count and then set up the claim for rent of the Texas land during the years 1912 and 1913, amounting to $150 as stated in the original petition. It further alleged the same facts stated in the first count as to Henry Barton leaving cattle in

Kansas which were shipped by Celia Barton to Missouri and sold by the Byers Brothers & Company corporations; that they claim that unknown third parties are interested in the proceeds and refuse to turn over the proceeds to Strother, the Missouri administrator. Wherefore, plaintiff prayed for an order directing such proceeds to be turned over to said Strother administrator, or the clerk of the court, and that the court ascertain the amount and extent of interest said Celia Barton and said estate of Henry Barton, deceased, have in said funds; and that the court decree that said funds be turned over to Strother, administrator, to be administered by the probate court of Jackson county in payment of plaintiff's claim and such other claims as may be presented by other creditors, if any. Judgment was also asked on said claim for $150.

A third count set up the taking and conversion of the windmill of the value of $125 and a similar claim for that amount.

The petition closed with a prayer for judgment against Celia Barton and said Strother, administrator, in the sum of $575, the aggregate of the claims set forth in the petition. The petition further prayed the court to ascertain the amounts owing to the estate of Henry Barton, deceased, from the fund arising from the proceeds of the cattle; that said amount so found to be due said estate be decreed to be turned over to Strother as administrator; that the court ascertain the amount owed by the estate of Henry Barton, deceased, to the plaintiff herein and decree the same a prior lien on the funds, and for other relief.

Upon the filing of the second amended petition, Celia Barton, as executrix, "appearing for the purpose of this motion only and for no other purpose" filed a second motion to dismiss. Said motion set up that she is a resident of Hemphill county, Texas; that her husband, Henry Barton, at the time of his death, was a resident of Hemphill county, that the county court of that county, which court has jurisdiction of deceased persons, appointed her executrix and that she was acting as such; that said Henry Barton, at the time of

his death was a co-partner of one J. S. Hood in certain cattle located in Texas; that she as executrix took charge of said cattle and with said Hood, shipped them to Kansas City where they were sold on the market and a part of the proceeds arising therefrom were applied to the payment of a chattel mortgage on said cattle held by Byers Brothers & Company; that the remainder of the proceeds are due to her as executrix of said estate, and said balance, so far as the estate of Henry Barton is interested therein, is in the custody of the law and of the said county court of Hemphill county, Texas, and is not subject to attachment or garnishment under the laws of Missouri; that, as said proceeds are a partnership fund belonging to the Henry Barton estate and J. S. Hood, they are not subject to attachment for the individual debts, if any, of the Barton estate; that for these reasons the petition should be dismissed as the court has no jurisdiction over the subject-matter of the suit.

As a further ground of dismissal, the motion alleged that defendant had not been personally served with summons either in her own name or as executrix of said estate and therefore has not been, and is not now, properly in court for the purpose of trying said cause on its merits and that the court had no jurisdiction over the person of this defendant, either in her personal capacity or as executrix of said estate. The motion also alleged that, on a motion by defendant in the probate court of Jackson county, Missouri, asking that court to revoke and cancel the letters issued to Strother as administrator of the estate of Henry Barton, deceased, the said court had revoked and annulled the same as having been issued without authority.

The trial court sustained said motion to dismiss, and plaintiff has appealed.

While it is true that Celia Barton is sued in her official capacity as executrix and not as an individual, yet it will be observed that the motion to dismiss is not based upon a lack of authority or power in the court to entertain a suit against a foreign executrix, but is based upon a want of *service summons*. In other words,

the lack of jurisdiction over the person of such executrix, asserted by the motion, is not a lack of jurisdiction *under the law,* but is a lack of jurisdiction because of the absence of service of summons. In addition to this ground, the motion says the court has no jurisdiction over the subject-matter of the suit because of the facts which appear, that is, the motion is not confined to want of jurisdiction for lack of service of summons but goes into other matters and attacks plaintiff's right to prevail because of them. When such other matters go to the merits of the case the want of jurisdiction over the person, because of no service of summons, is waived. [Newcomb v. New York Central etc. R. Co., 182 Mo. 687; Thompson v. Mercantile Town Mut. Ins. Co., 114 Mo. App. 109; Works on Jurisdiction of Courts, sec 22, p. 104; 3 Cyc. 511, 528; Bankers Life Ins. Co. v. Robbins, 59 Neb. 170; Fitsgerald, etc. Co. v. Fitzgerald, 137 U. S. 98]; and plaintiff claims that is what defendant did in this case. There is no doubt but that the motion did contain an attack upon the jurisdiction of the court over the subject-matter. And in the case of Mahr v. Union Pacific R. Co., 140 Fed. 921, 1. c. 923, it is said:

"Whenever a litigant appears to deny jurisdiction over his person, which would otherwise exist but for the failure to pursue the methods prescribed by law for bringing him into court, he must confine himself to that particular branch of jurisdiction. It is a matter of indifference to him whether or not the court has jurisdiction over the subject-matter; so long as it has no jurisidiction over his person, it cannot in any way injuriously affect his interests. He must therfore be content to stop with the suggestion that the summons or notice, as the case may be, required by the law to be served, has not been served, and that the court is therefore not entitled to deal with him in the absence of such service. As to whether the court has jurisdiction over the matter embodied in the complainant he need give himself no concern. If he does, in a transitory action, and enters upon a discussion of that question or makes a challenge as to that point, he waives

the want of service and enters voluntarily into a controversy which goes to the merits, and thereby submits to the jurisdiction of the court over his person. If the action is transitory, it is triable in any competent forum where jurisdiction of the person may be obtained.''

Defendant cites Myer v. Phoenix Ins. Co., 184 Mo. 481, l. c. 487 to the effect that ''a defendant can unite in the same pleading a plea to the jurisdiction, as to the person as well as to the subject-matter, with a plea to the merits, and that he does not thereby waive the question of jurisdiction of the court.'' But in Thomasson v. Mercantile Town Mutual Ins. Co., 217 Mo. 485, l. c. 498, the Supreme Court said this ''meant no more than that the plea to the jurisdiction must be one in which the court had no jurisdiction of the person under the law and did not mean the mere insufficient service of a summons in a case in which the court had jurisdiction upon a proper service of the writ.'' As hereinabove stated, the objection to jurisdiction over the person is not based upon want of jurisdiction under the law, but on account of absence of summons. The objection that no jurisdiction over the person had been obtained because *no service was had* would, therefore, seem to have been waived, unless a difference is made, as to such waiver, by the question whether the suit was one which the court had power to entertain if the defendant had been properly brought into court. However, this question of whether the court had power to entertain the suit even if defendant had been regularly served, is one of sharp issue between the plaintiff and said defendant. Plaintiff claims that under the Texas law above quoted, allowing a testator to provide in his will that the administrator of his estate shall not be subject to the supervision of the probate court, the executrix became, in effect, the trustee of an express trust and could be sued in any court of competent jurisdiction, either in the State of Texas or in Missouri or elsewhere, wherever the property and the executrix could be found. In other words, plaintiff claims that the action is transitory; while defendant's posi-

tion is that, *under Missouri law,* the trial court cannot
entertain a suit, of the character this one is, against an
executrix especially a foreign one.   In view of the
foregoing, we think the great question in the case is
whether the court had jurisdiction of the subject-matter,
i. e. the power to entertain the suit.   If it had, then
the mere objection that it had no power to proceed
because no service of summons was had upon defendant,
cannot avail her, since that has been waived.   On the
other hand, if the court has no power to entertain a
suit of this character, that is, has no jurisdiction over
the subject-matter, the question of service or no service
is immaterial.

We, therefore, turn to the question whether the
trial court had any jurisdiction over the subject-matter
of the suit.   The facts upon which defendant relies
as showing want of such jurisdiction are admitted and
appear upon the face of the second amended petition.
The motion to dismiss may be considered as filling the
office of demurrer since it seeks to dispose of the whole
case on a question of law.   [Shohoney v. Quincy, Omaha
& Kansas City R. Co., 231 Mo. 131, l. c. 149.]

It is plaintiff's contention that under the above
quoted Texas statute, as construed by the Texas courts,
when a testator provides in his will, as did Henry
Barton, that his executor may adminster his estate
independently of the probate court, the executor does
not hold the property under the direction and control
of the court, but takes it with full power to pay debts
and make distribution without judicial direction or sanc-
tion; and such executor can be directly sued by a
creditor of the estate and judgment be rendered against
him in any court of competent jurisdiction.   Plaintiff,
therefore, says that in this case no reason exists why
Celia Barton, the foreign executrix, may not be directly
sued in this State and plaintiff's claim established and
ordered paid out of any funds belonging to said estate
in this State and within the territorial jurisdiction of
the court; that the reason forbidding a suit against the
executrix does not apply in this case as in the case of
the ordinary executor or administrator of an estate.

There is no question but what the Texas courts do hold that such an executor takes the property independently of the probate court and that he may administer the estate and make distribution without judicial sanction. [Parks v. Knox, 130 S. W. 203, l. c. 207; Holmes v. Johns, 56 Tex. 41, l. c. 51; McLaine v. Belvin, 47 Tex. 493; Smyth v. Caswell, 65 Tex. 379, l. c. 382.] He can also be directly sued in Texas and a judgment can be rendered against him and the property in his hands as executor is thus made subject to levy and sale under execution. [Roberts v. Connellee, 71 Tex. 11, l. c. 15.] The defendant executrix, however, claims that under another section of the Texas statute, an executor cannot be required to plead to any suit for money until after the expiration of twelve months from the probate of the will, and that by virtue of certain other sections the creditors of an estate may require a bond of the executor or heirs, and, if same is not forthcoming, the probate court will administer it in the ordinary way. [Journey v. Shook, 105 Tex. 551, l. c. 555.] Whether we can take notice of these other statutes or not, it is a question how much help can be derived from them since it is clear from the first one above mentioned that an executor can be sued in any Texas court of competent jurisdiction; and, with reference to the other sections in relation to creditors requiring bond, it does not appear in the pleadings in this case whether Celia Barton is under any bond or has been required, and has failed to give one whereby the court has resumed administration of the estate. But whether we can or cannot look to these other statutes, certainly the statute quoted in plaintiff's second amended petition, and on which plaintiff relies, does not mean that the payment of creditors shall be left to the will or caprice of the executor. The allegation in plaintiff's petition that the property of the estate is subject to plaintiff's claim would seem to admit that. We may, therefore, safely conclude that such statute does not relieve the executor from the duty and obligation to pay debts as far as the assets of the estate will permit, and that such is his duty the same as any other executor. However,

so far as the pleadings show, the executrix herein is independent of the probate court, and, therefore, the question still remains whether a Texas executor, who is thus independent of the probate court, can be sued in Missouri, in a case like the one at bar, or whether the same rule should apply to such an executor as to any other.

It would seem that this should depend upon what our law has to say upon the matter, and if it is silent upon the subject, then other principles governing the relations between States and the rights of their respective citizens may not be without bearing.

Whatever may be the nature of this case after the second amended petition was filed, originally it was a suit by attachment against a foreign executrix to recover a debt claimed to be due plaintiff from the estate of testator. By means of the attachment writ the money in the hands of the garnishee was impounded so to speak and held in this State until plaintiff by its last amended petition could get the holder into court as a defendant in what is now claimed to be, and, in form at last, is, an equity suit. It would seem, therefore, that the plaintiff's right to maintain the suit under the second amended petition should be determined the same as if the suit was still one in attachment and garnishment, as it was in the beginning.

The title to the property in this case was in the foreign executrix *before* it came into this State. It was not property in this State of which testator had died seized and possessed. Neither did executrix wrongfully bring the property into this State to be converted to her own use. She is not charged with any breach of bad faith. She shipped the cattle to Kansas City for the purpose of paying the chattel mortgage thereon or at least reducing the property of the estate to cash. Under these circumstances can property, shipped by a foreign executor into this State for the purpose of disposing of it for the best interest of the estate, be subject to attachment in this State or be affected by such attachment proceedings, or be compelled to be

paid into the hands of an administrator appointed in this State?

The law under which plaintiff is asking the court to establish his demand against the estate is Missouri law; that is the law which the forum is called upon to apply. The Texas statute pleaded does not give plaintiff a cause of action, nor was it pleaded for that purpose, but only to escape the rule in this State affecting the right to bring such a suit against ordinary executors or administrators. And plaintiff's suit necessarily presupposes or assumes that the title to the property seized is in the estate of the deceased. But in this case the title to the property was in the executrix and the property was reduced to her possession before it came, into the State. There was no vacancy in the legal ownership on account of which an administration in Missouri could be started and the property placed in the hands of a Missouri Administrator. As said in Turner v. Campbell, 124 Mo. App. 133, l. c. 146, "every administration operates on such property of the deceased as is at the time of the grant, or shall be at any time during its existence, within the jurisdiction of the court granting the same, the question determining the jurisdiction is whether there is or is not any vacancy in the legal title to the property where and when found. For if goods are once in the legal possession of an administrator duly appointed, they cannot afterward be affected by an administration granted in another jurisdiction to which they may be removed, because there is then no vacancy in the legal ownership; they are, technically, no longer the goods of the deceased, but of the administrator of the jurisdiction from which they were removed." The language here used is identical with that in 1 Woerner's Am. Law of Adm. (2 Ed.), sec. 159, p. 388. There was, therefore, no authority or warrant for the appointment of Strother as ancillary administrator, and consequently no power in the trial court to render a judgment directing that the property involved herein be turned over to such ancillary administrator.

But plaintiff's position is that inasmuch as by Texas law a suit could be brought in that State against the executrix in any court of competent jurisdiction, this authorizes any Missouri court of competent jurisdiction to maintain a suit against the executrix. But that does not follow by any means. So far as our law is concerned, we · do not recognize or give validity to the appointment of an executor made in a foreign State. His powers stop at the boundaries of the State in which he is appointed. [Gregory v. McCormack, 120 Mo. 657.] Of course if the foreign executor has acquired title to property in the foreign State and brings it into this State for purposes in keeping with his appointment, our law respects his title, but it does so without entering into any question as to the validity of his appointment. "Where the legal title to the intestate's or testator's chattels has been fully vested in the executor or administrator, it is obvious that he may remove them, or follow them into a foreign jurisdiction without forfeiting or losing the ownership, for the title to personal property duly acquired by the *lex loci rei sitae* will be deemed valid and be respected as a lawful and perfect title in every other country." [1 Woerner's Am. Law of Admn. (2 Ed.), sec. 162, p. 393.] But plaintiff is suing for a debt owed by Henry Barton, deceased, and suing Celia Barton *as executrix,* treating her title to be precisely and in all respects the same as that of the decedent's. In other words, plaintiff is asking our courts to adjudicate the validity of Mrs. Barton's Texas appointment, for otherwise a judgment against her would have have no force against the estate. Mrs. Barton could not come here and originate and maintain a suit, as a Texas executrix, and the corollary of that proposition is that she cannot be subjected, in her official capacity, to a suit against her in this State. "No executor or administrator can, in his official capacity, originate or maintain an action in the courts of any country, save that which has granted him letters testimentory or of administration, without authority from the country in which he brings the action; nor collect rents, or in any manner intermeddle with the

property of the deceased in such country. The strict correlative of this proposition is, that no executor or administrator can be subjected to an action, in his official capacity, in the State or country, in which he is not recognized as such; nor is he accountable except in the forum from which he obtained his authority, for assets collected in a foreign state by virtue of his office.'' [1 Woerner's Am. Law of Admn. (2 Ed.), sec. 160, p. 389.] In short, the powers and liabilities of an executor or administrator, so far as his representation of the estate or his standing in the shoes of the deceased is concerned, are confined to the boundaries of the State in which such executor or administrator is appointed. Plaintiff has a claim against the estate which on its face originated in Texas and there is nothing which prevents him from asserting that claim in Texas. Instead of doing this, plaintiff waits until the executrix sends estate property to market out of the State in due course of business, and then brings an attachment suit in the State where the property has been sent, asking either that a judgment be rendered against executrix or that the property be ordered turned over to an ancillary administration to be administered by it in another forum although the property has already been reduced to the possession of the first administrative officer, the executrix aforesaid, and can be made to satisfy the claims against the estate in the jurisdiction governing that estate. If the property be not property of the estate but partnership property, which the answer of the garnishee alleges, and which plaintiff did not deny, but in his petition admits that such may be the case since it asks that the extent of the estate's interest be ascertained, then the partnership property is levied upon by a foreign court to enforce an individual claim against the estate of one of the partners. But without regard to whether the property is partnership assets or not, we do not think the court has power to entertain and enforce a suit of this character. To say that when an executrix has shipped property of the estate to another jurisdiction for sale on the market,

a creditor in the latter jurisdiction can either attach it or have an ancillary administrator appointed and the property taken away from the first administrative officer to satisfy that creditor's demand, when there is nothing to prevent the creditor from enforcing his claim in the State where the property and the demand originated, is to open the door to much confusion and to disregard the territorial limitations heretofore recognized as existing upon the powers and liabilities of executors and administrators. The results likely to follow are much too high a price to pay merely to accommodate the *convenience* of a creditor who prefers to sue in his home forum.

By the clear intent of our law attachment is not available against property belonging to an estate in process of administration. [Barnes v. Stanley, 95 Mo. App. 688, l. c. 694; Secs. 190-2338-2339 and 2415, R. S. 1909.] If the suit in the case at bar can be maintained, then the claim therein pleaded can be enforced against the estate of a deceased person although there is no recognition by our law of the appointment of the foreign executrix, and there is nothing in our law giving such a forum as the trial court in this case the power to attach property of a deceased person's estate, and, strictly speaking, there is no property in this State the title to which is in the estate. The title of Mrs. Barton, which this State will in any event recognize, is the title arising from the fact of her possession of the property previous to and at the time it came into the State and not that arising from the validity of her appointment as executrix. The debt for which plaintiff sues is not one contracted by executrix but one arising by contract between plaintiff and deceased. Hence, the liability of the executrix as to such a debt extends no further than the boundaries of the State where she was appointed and derives her authority.

We are of the opinion that the judgment of the trial court was right and that it should be affirmed. It is so ordered. All concur.