In the Matter of the ESTATE OF Leslie Eugene WIDMEYER, Deceased,

Katherine B. ALKEMA, Administrator of the Estate of Leslie Eugene Widmeyer Under Appointment by the Superior Court of the California County of San Diego, Plaintiff–Appellant,

v.

Harry E. WIDMEYER, Individually and as Personal Representative of the Estate of Leslie Eugene Widmeyer By Appointment of the Circuit Court of Greene County, Missouri, Defendant–Respondent.

No. 14961.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 29, 1987.

Motion for Rehearing or transfer Denied Nov. 20, 1987.

Application to Transfer Denied Jan. 20, 1988.

John L. Sullivan, St. Louis, for plaintiff-appellant.

Charles (Ed) Lee, Walker, Salveter, Lee & Graff, Springfield, for defendant-respondent.

FLANIGAN, Judge.

On November 12, 1985, Leslie Eugene Widmeyer, a resident of California, died intestate in that state. He was survived by a half-brother, Harry E. Widmeyer. On January 17, 1986, Harry E. Widmeyer filed, in the Probate Division of the Circuit Court of Greene County, an application for letters of administration in the Estate of Leslie E. Widmeyer, Deceased. On the same date the Missouri court entered an order granting "Supervised Letters of Administration" and issued such letters to Harry E. Widmeyer.

On May 9, 1986, Katherine B. Alkema, styling herself "Administrator (sic) of the Estate of Leslie Eugene Widmeyer Under Appointment by the Superior Court of the California County of San Diego," as "plaintiff," filed, in the Missouri court, a document entitled "Petition to Determine Title to Property." The contents of that petition will be set forth later. Named as defendant was "Harry E. Widmeyer, Individually

and as Personal Representative of the Estate of Leslie Eugene Widmeyer, Deceased." Defendant filed a motion to dismiss the petition on several grounds, including the following: "That plaintiff does not have the legal capacity or standing to prosecute the instant cause of action."

The trial court, following a hearing on the motion, entered its order dismissing the petition. The order did not recite the ground or grounds on which it was based. The record on appeal contains only the legal file. There is no transcript of the evidence, if any, adduced at the motion hearing. Plaintiff appeals.

Plaintiff's first point is that the trial court erred in granting the motion to dismiss on the ground that plaintiff had no standing to sue in that plaintiff had standing pursuant to § 472.013.[1] For the reasons which follow, this court holds that the trial court properly dismissed the action on the ground plaintiff lacked standing to sue and that § 472.013 is of no aid to plaintiff. This holding makes it unnecessary to consider plaintiff's other points.

The caption of the petition listed the parties, respectively, as "plaintiff" and "defendant," as indicated above. It should be noted that, although Widmeyer was designated as defendant "Individually and as Personal Representative, ..." the caption designated the plaintiff only in her capacity as administrator (sic) and not individually. Plaintiff appeals only in her representative capacity.

The petition, which was verified by Katherine B. Alkema, alleged: Plaintiff is the California administrator of the estate of Leslie E. Widmeyer, deceased; decedent died intestate in San Diego County, California on November 12, 1985, having been a resident of California since the 1940's; de-cedent "was survived by a half-brother, the defendant Harry E. Widmeyer, and the plaintiff Katherine B. Alkema, who has a property interest in the estate of the decedent as his nonmarital partner"; at the time of his death decedent owned certain assets which have been reduced to the possession of the defendant; the assets are:

| Item | Asset | Value |
|------|-------|-------|
| A | GNMA Certificate No. 02171807SF | $38,079.11 |
| B | Bank account, Boatmen's National Bank, Springfield, Missouri | 1,586.27 |
| C | Bank account, Security Pacific Bank, San Diego, California | 9,340.13 |
| D | Bank account, Security Pacific Bank, Panorama City, California | 5,347.67 |
| E | 1984 Jaguar automobile | 34,580.20 |
| F | Tangible personal property, including gold watches and diamond rings | 10,000.00 |

The petition further alleged: Defendant physically removed Item A "from the former possession of decedent in California" and transported it to Missouri where it is inventoried in the Missouri estate; defendant inventoried Item B as an asset of the Missouri estate; Item B has a "Missouri situs"; defendant obtained possession of Item C and Item D by filing an affidavit pursuant to § 630 of the Probate Code of California (Small Estates Procedure) and converted same to his own use and did not "list them" in the Missouri estate; defendant secured transfer of the title to Item E pursuant to § 5910 of the California Vehicle Code, "wherein he represented that he would otherwise be entitled to transfer under § 630 of the Probate Code of California"; defendant removed Item F from the former residence of decedent.

The petition further alleged: All of the foregoing property is now in the possession of the defendant, "either individually or as claimed personal representative-sole heir," and is properly the property "of plaintiff

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S. Section 472.013 reads:
    "Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this code, or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person, other than a bona fide purchaser, benefiting from the fraud, whether innocent or not. Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than ten years after the time of commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate."

Katherine B. Alkema as personal representative of the decedent's estate ... in that defendant secured possession of all such property pursuant to California law based upon the misrepresentation that the total value of decedent's estate subject to probate did not exceed $60,000; Moreover, there are adverse claims against the estate which the Small Estates Procedure is not designed to resolve and, therefore, probate in California is necessary."

The prayer of the petition was that the court determine that "plaintiff is entitled to the title to and possession of all of the above-described property pursuant to the provisions of § 473.340,[2] in that the defendant is adversely withholding and claiming both title and right to possession of the described property. Items of property not inventoried by the defendant in the decedent's estate are properly the subject matter of a constructive trust to be imposed by this Court upon such property in that such items are properly subject to probate in the State of California."

Significantly, plaintiff did not file with the Probate Division of the Circuit Court of Greene County an authenticated copy of her appointment as California administrator or a copy of any official bond which she has given. It should be noted also that the petition makes no claim that the California administrator ever had possession of any of the described property.

▆▆▆▆ Missouri applies the general rule that an administrator, appointed in state A, cannot sue in his representative capacity in state B in the absence of a statute in state B authorizing him to do so. *Demattei v. Missouri–Kansas–Texas R. Co.*, 345 Mo. 1136, 139 S.W.2d 504, 506[5] (1940); *In re Thompson's Estate*, 339 Mo. 410, 97 S.W. 2d 93, 96[4] (1936); *Wells v. Davis*, 303 Mo.

388, 261 S.W. 58, 61[3] (1924); *Naylor's Adm'r v. Moffatt*, 29 Mo. 126, 128–129 (1859); *Bank of Seneca v. Morrison*, 200 Mo.App. 169, 204 S.W. 1119, 1122 (1918); *Hill v. Barton*, 194 Mo.App. 325, 188 S.W. 1105, 1110 (1916); *Miller v. Hoover*, 121 Mo.App. 568, 97 S.W. 210 (1906); 34 C.J.S. Exec. and Adm'r, § 1008, p. 1256; 31 Am. Jur.2d, Exec. and Adm'r, § 774, p. 312; Goodrich and Scoles, Conflict of Laws (4th Ed.), §§ 185–186, p. 357. Letters of administration have no extraterritorial effect. *State v. Cross*, 314 S.W.2d 889, 894–895 (Mo. banc 1958); *Demattei v. Missouri–Kansas–Texas R. Co.*, supra, 139 S.W.2d at 506[5]; *In re Thompson's Estate*, supra, 97 S.W.2d at 96; *Wells v. Davis*, supra, 261 S.W. at 61; *Hartnett v. Langan*, 282 Mo. 471, 222 S.W. 403, 409 (1920); *Bank of Seneca v. Morrison*, supra, 204 S.W. at 1122; *Hill v. Barton*, supra, 188 S.W. at 1110; *Miller v. Hoover*, supra, 97 S.W. at 211; *Emmons v. Gordon*, 140 Mo. 490, 41 S.W. 998, 1001 (1897); *McPike v. McPike*, 111 Mo. 216, 20 S.W. 12, 13 (1892); *First Nat. Bank of Brush, Colo. v. Blessing*, 231 Mo.App. 288, 98 S.W.2d 149, 152 (1936); *Naylor's Adm'r v. Moffatt*, supra, at 128–129. It has been said that a foreign administrator, seeking to recover on a debt *to his decedent*, lacks legal capacity to sue. *Gregory v. McCormick*, 120 Mo. 657, 25 S.W. 565, 566 (1894).

One reason underlying the general rule is "that to permit the foreign administrator to sue might result in the exhaustion or diversion of the assets of the estate to the injury of local creditors." *Demattei v. Missouri–Kansas–Texas R. Co.*, supra, 139 S.W.2d at 506.

With respect to a claim *belonging to the decedent*, the court said, in *In re Thompson's Estate*, supra, 97 S.W.2d at 97:

---

**2.** Section 473.340 reads, in pertinent part:

"1. Any executor, administrator, creditor, beneficiary or other person who claims an interest in property which is claimed to be an asset of an estate may file a verified petition in the probate division of the circuit court in which said estate is pending seeking determination of the title, or right of possession thereto, or both. The petition shall describe the property, if known, shall allege the nature of the interest of

the petitioner and that title or possession of the property, or both, are being adversely withheld or claimed....

3. Upon a trial of the issues, the court shall determine the persons who have an interest in said property together with the nature and extent of any such interest. The court shall direct the delivery or transfer of the title or possession, or both, of said property to the person or persons entitled thereto...."

"The general rule as stated in Restatement of Conflict of Laws is: 'In the absence of a statute permitting it, a foreign administrator cannot sue to recover a claim belonging to the decedent.' The reason upon which such rule is based is that 'the administrator is not himself the creditor, and can sue only as he is empowered to do so by law. He gains no authority by virtue of an appointment as officer of the court of one state to act as officer in another state. He has no official authority as representative in the courts of the second state and cannot sue in a representative capacity there. Nor can he avoid his incapacity to sue in a foreign state by bringing suit through an attorney in fact, or by instituting action in a federal court.' Restatement of Conflict of Laws under section 507. Thus we see letters of administration have no extraterritorial force and confer upon the holder no extraterritorial powers."

In *Miller v. Hoover*, supra, 97 S.W. at 211 the court said:

"But, there are cases in which a foreign executor or administrator may maintain an action relating to the property of the decedent. *Thus where he has reduced movable property to his possession*, and has brought it into this state, and has been wrongfully dispossessed thereof, he may sue in his own name to recover either the property or damages for its conversion without obtaining a grant of an ancillary administration. 1 Woerner on Am. Law of Adm., § 162. And where the foreign administrator, as such, has recovered a judgment in the state of his appointment against a debtor of the estate and the debtor afterwards removes to his state the foreign administrator may sue in his own name on that judgment in the courts of this state. *Tittman v. Thornton*, 107 Mo. 500, 17 S.W. 979, 16 L.R.A. 410; *Hall v. Harrison*, 21 Mo. 227, 64 Am.Dec. 225. But, in such apparent, though not real, exceptions to the general rule it will be noted that the administrator had become vested with the full legal title to the property, was, in fact, the trustee of an express trust and, as such, could maintain an action relating to the property in his individual capacity." (Emphasis added.)

In *Crohn v. Clay County State Bank*, 137 Mo.App. 712, 118 S.W. 498 (1909), the Missouri administrator of the estate of William Lowe, deceased, brought an action in Missouri against a Missouri bank seeking recovery of a deposit left by deceased with the bank. Lowe, a resident of Iowa, died leaving Missouri assets in addition to the involved deposit. Letters of administration on Lowe's estate were granted in Iowa. Defendant paid the Iowa administrator the amount of the involved deposit and relied upon that payment as a defense to the action by the Missouri administrator. Rejecting that defense and affirming a judgment in favor of the Missouri administrator, the court said, 118 S.W. at 499:

"It is a familiar rule of law that title to personalty at the death of the owner vests in the administrator. But here the controversy to the property is between two administrators appointed in different jurisdictions and under the authority of different sovereignties. The title and authority of the Iowa administrator in property of a deceased, who resided in that state is governed by the laws of that state, which are without force in Missouri. The property in controversy was in the latter state, and, while it cannot be appropriated from the true or real owners, yet it is under the jurisdiction of the latter state, and can only be withdrawn therefrom in pursuance of Missouri laws. This rule is justified by the duty which a state owes its own citizens who may be creditors, as well as to itself in the way of taxation. Therefore, a creditor of a deceased who was a nonresident is given the right to ask an administration of property which may be found in this state. And it will not do to say there are no creditors, for within the period of limitations that could not well be known. *Becraft v. Lewis*, 41 Mo.App. 546. *So it has come to be well-recognized law in this state that the foreign domiciliary administrator is without title to property in this state. Naylor v. Moffatt*, 29 Mo. 126. '*He cannot maintain a suit*

*here for such property for the simple reason that he has no title to the property.'"* (Emphasis added.)

In the case at bar, so the petition claims, the alleged misconduct of defendant occurred in California *after* the death of the decedent. There is no allegation that any of defendant's conduct took place during the life of the decedent.

In *Turner v. Campbell,* 124 Mo.App. 133, 101 S.W. 119, 123 (1907), the court, quoted with approval the following language in 1 Woerner's Administration Law (2d Ed.) § 361:

"But it may be that the situs of property is changed *after the death of the owner, and before any administrator reduces it into possession.* In such case, since every administration operates on such property of the deceased *as is at the time of the grant,* or shall be at any time during its existence, *within the jurisdiction of the court granting the same,* the question determining the jurisdiction is whether there is or is not any vacancy in the legal title to the property where and when found. For if goods are once in the legal possession of an administrator duly appointed, they cannot afterward be affected by an administration granted in another jurisdiction to which they may be removed, because there is then no vacancy in the legal ownership. They are, technically, no longer the goods of the deceased, but of the administrator of the jurisdiction from which they were removed. *But if the goods have never been in possession of the administrator, although they be removed from the jurisdiction where he might, but did not, take possession of them, an administrator of the jurisdiction to which they are taken may do so, without regard to priority in the grant of the respective administrations.* Thus, where stagecoaches and stagehorses belonged to a line running from one state to another, it was said that if there had been different administrators in the two states, *'the property must have been considered as belonging to that administrator who first reduced it into*

*possession within the limits of his own state.'"* (Emphasis added.)

In the case at bar the assets of the decedent, including the assets moved to Missouri from California, have never been in the possession of the California administrator. All of the assets were first reduced to possession by defendant, although he may have obtained possession of the California assets prior to his appointment as the Missouri administrator.

Restatement, Second, Conflict of Laws § 320, reads:

"§ 320. When Chattel Brought into State After Death of Owner May Be Administered

(1) Except as stated in Subsection (2), when a chattel is brought into a state after the death of one having any interest therein and possession of it is acquired by the executor or administrator of the state into which it is brought, the chattel may be administered in such state.

(2) If the chattel is *wrongfully taken from the possession of a foreign executor or administrator* and is brought into another state, the executor or administrator in the state to which the chattel is brought may administer it, subject to the right of the executor or administrator from whom it was taken to reclaim the chattel or its proceeds." (Emphasis added.)

In the case at bar, the facts fit Subsection (1). Under the facts here, Subsection (2) does not come into play, as an exception to Subsection (1), because the California assets were not wrongfully taken *from the possession* of the California administrator. The petition makes no claim that the California administrator had reduced any of the California assets to possession before those assets were brought to Missouri. Under the foregoing authorities, in the absence of a Missouri statute, plaintiff had neither a right to relief nor standing to assert such a right.

Is the prosecution of the instant petition by the California administrator authorized by a Missouri statute or statutes? For the

reasons which follow, this court concludes that no such authority exists.

Sections 473.665 through 473.694 deal with assets of nonresidents. Administration proceedings in Missouri with respect to property of a nonresident decedent which is within the jurisdiction of the state are original proceedings conducted under the authority of Missouri solely "and are independent of and not ancillary to proceedings . . . in any other state. . . ." § 473.668. Missouri courts have jurisdiction over all tangible and intangible property of a nonresident decedent "having a situs in this state." § 473.671. Other relevant portions of §§ 473.665 through 473.694 are set forth below.[3]

Plaintiff argues that the Missouri court lacked jurisdiction over the California assets because they did not have "a situs in this state." See § 473.671, supra. Such an argument was rejected by the New York Court of Appeals in a case factually similar to the one at bar.

In *Matter of Accounting of Hughes*, 95 N.Y. 55 (1884), a Pennsylvania intestate died in Pennsylvania leaving no assets in New York but leaving assets in Pennsylvania. After the intestate's death, one Hughes brought the assets to New York and letters of administration were issued to him by the surrogate of Kings County, New York. Later an administrator was

appointed in Pennsylvania. On final settlement of the accounts of the New York administrator, the Kings County surrogate, on the petition of the Pennsylvania administrator, directed the New York administrator to deliver the assets to the Pennsylvania administrator. The decree of the surrogate was affirmed by the supreme court and the New York administrator appealed to the court of appeals.

In upholding the appeal of the New York administrator, who attacked that portion of the surrogate's decree directing him to deliver the assets to the Pennsylvania administrator, the court of appeals said, at p. 60:

> "Where there are two administrators of a single estate, one in the place of the domicile of the testator or intestate and the other in a foreign jurisdiction, whether the courts of the latter will decree distribution of the assets collected under the ancillary administration, or remit them to the jurisdiction of the domicile, *is not a question of jurisdiction*, but of judicial discretion depending upon the circumstances of the particular case." (Emphasis added.)

After "conceding the illegality of removal of the assets from Pennsylvania," the court of appeals said, at p. 63:

> "*The assets being in fact here*, the surrogate of Kings county acquired *jur-*

---

**3.** Section 473.675(4) reads:

"(4) Notwithstanding the requirements of this section that distributions during or at the conclusion of an administration shall be made as if the decedent were a resident, if the court finds that hardship to a foreign creditor would result therefrom or that the best interests of all persons having an interest in the estate would be forwarded by making a distribution to a foreign personal representative, the court may, in its discretion, order such distribution to the extent it finds necessary to avoid such hardship or to forward such interests."

Section 473.676 reads:

"*If no local administration*, or application or petition therefor, *is pending in this state*, a domiciliary foreign personal representative may file with a probate division of the circuit court in this state, in a county in which property belonging to the decedent is located, *authenticated copies of his appointment* and of any *official bond* he has given." (Emphasis added.)

Section 473.677 reads:

"A domiciliary foreign personal representative, *who has complied with section 473.676*, may exercise as to assets in this state all powers of a local personal representative and *may maintain actions and proceedings in this state*, subject to any conditions imposed upon nonresident parties generally. When acting in this state under this authority, a domiciliary personal representative has the duties and obligations of a local personal representative, except that he may pay or deliver personal property under section 473.691." (Emphasis added.)

Section 473.678 reads, in pertinent part:

"The power of a domiciliary foreign personal representative under section 473.677 . . . shall be exercised *only if there is no administration, or application therefor, pending in this state. An application or petition for local administration of the estate terminates the power of the foreign personal representative to act under section 473.-677*, but the local court may allow the foreign personal representative to exercise limited powers to preserve the estate. . . ." (Emphasis added.)

*isdiction* to grant administration. He was not deprived of jurisdiction because the assets were irregularly brought here, nor does that fact deprive him of jurisdiction to decree distribution."[4] (Emphasis added.)

Review of the Missouri statutes pertaining to the estates of nonresidents discloses that there is no authority for plaintiff, who purports to be the California administrator, to sue in her representative capacity in Missouri under the circumstances here.

Section 473.677 authorizes a domiciliary foreign personal representative, who has complied with § 473.676, to "maintain actions and proceedings in this state." The California administrator has not complied with § 473.677 in two respects. She has not filed in the Probate Division of the Circuit Court of Greene County an authenticated copy of her appointment and a copy of any official bond she has given. Further, there is a local administration pending in Missouri so such a filing could not now be made.

Section 473.678 permits a domiciliary foreign personal representative to exercise the power under § 473.677, which includes the power to maintain actions and proceedings in this state, *"only"* if there is no administration, or application therefor, pending in Missouri.

To permit the California administrator to maintain the instant proceeding would violate the express language of § 473.678. The instant proceeding was, of course, instituted after the Missouri administrator had been appointed.

Neither § 472.013, set forth in footnote 1, nor § 473.340, set forth in footnote 2, mentions, specifically, a foreign administrator. Indeed § 472.013 does not mention an administrator at all. That statute refers to "any person injured." Section 472.010 reads, in pertinent part: "When used in this code, unless otherwise apparent from the context: '... 24. "Person" includes natural persons and corporations.' "

Any construction of § 472.013 or § 473.340 which would permit the maintenance of the instant action would be inconsistent with the express language of § 473.678 and § 473.677. The material portions of § 473.340 were enacted in 1973. Section 472.013 was enacted in 1980 as a part of the same senate bill which contained §§ 473.665 to 473.694.

"Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one * * *."

*Laughlin v. Forgrave*, 432 S.W.2d 308, 313[1] (Mo. banc 1968).

The trial court properly sustained respondent's motion to dismiss. In so ruling, this court holds merely that the instant proceeding in the Missouri court may not be maintained by the California administrator. Whether other remedies are available to the California administrator in California, or to other persons in Missouri, is not decided. Nothing in this opinion precludes the trial court from invoking, if circumstances warrant, the discretion afforded by § 473.675(4), set forth in footnote 3.

The judgment is affirmed.

HOGAN, J., concurs.

---

**4.** In *Moore v. Ingram*, 46 Colo. 204, 102 P. 1070 (1909), a Missouri administrator was successful, in Colorado, in compelling the return to Missouri of assets wrongfully removed from Missouri to Colorado after the death of the Missouri decedent. The court said, 102 P. at p. 1071: "Comity and justice, as well as a proper regard for the rights of creditors of our sister state, require that the property should be returned to Missouri to be there administered." The court ordered that the assets taken from Missouri, in an amount sufficient to satisfy the claims of Missouri creditors and all costs of administration, should be turned over to the Missouri administrator.

PREWITT, P.J., concurs in the result.

MAUS, J., concurs in the result and files concurring opinion.

MAUS, Judge, concurring.

I concur in the result. "Appellate review is limited to those issues presented in defendants' points and they alone need be and are considered." *Smith v. Welch*, 611 S.W.2d 398, 399 (Mo.App.1981). "It is not the function of the appellate court to serve as advocate for any party to an appeal. That is the function of counsel. It would be unfair to the parties if it were otherwise." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978). "Assignments of error set forth for the first time in the reply brief do not present issues for appellate review, accordingly the contention is denied." *Application of Gilbert*, 563 S.W.2d 768, 771 (Mo. banc 1978).

The plaintiff's first point is: "The trial court erred in granting the motion to dismiss on the ground that plaintiff had no standing to sue in that plaintiff had standing pursuant to Missouri Probate Code Section 472.013." Section 472.013 in part provides:

Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under *this code*, or if fraud is used to avoid or circumvent the provisions or purposes of *this code*, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person, other than a bona fide purchaser, benefiting from the fraud, whether innocent or not. (emphasis added).

To support this point the respondent argues as follows:

Respondent worked a fraud on this court, and the courts of California, by misrepresenting the size of decedent's domiciliary estate, securing for himself assets to which he would not be entitled to distribution under the California Small Estates procedure, and now seeks to administer these assets in a Missouri probate proceeding in order to secure title which he could not lawfully have ob-

tained in California. Respondent seeks to misuse the jurisdiction of this court to obtain property.

Plaintiff's second point is that she did "adequately state a claim for misrepresentation." In argument under this point, the plaintiff again relies upon the misrepresentation in California. This is the sole allegation of misrepresentation in her petition.

The plaintiff's third point is that the trial court erred in dismissing the petition because the probate division did not lack subject matter jurisdiction to impose a constructive trust. Again, under this point the plaintiff argues that a constructive trust is a proper remedy based upon the alleged misrepresentation in California.

It is apparent that the only error asserted by the plaintiff is that the dismissal of her petition was contrary to § 472.013.

Respondent represented to the California courts, under its Probate Code Sections 630 and 5910, that decedent's probate estate was less than $60,000 when, as set forth in the inventory on file, respondent knew that the decedent's estate was actually $94,459, Statement of Facts, above.

Appellant has raised a claim of fraud, with standing properly derived from Missouri Probate Code Section 472.013. This case is one of first impression in Missouri, no applicable case law having been found. (Plaintiff's Brief)

By its own terms, § 472.013 is limited to proceedings "under this code", meaning the Probate Code of Missouri. Misrepresentation in California is not a basis for relief under that section. Nor does that section give the plaintiff standing to sue in the Probate Division of the Circuit Court of Greene County. Because plaintiff's points are without merit, I concur in the result.

However, I cannot concur in all of the observations in the principal opinion concerning the right of an administrator appointed in another state to maintain an action in Missouri. Sections 473.665 to 473.694 deal with the estates of nonresident decedents. Section 473.671 declares that "The courts of this state have jurisdic-

tion over all tangible and intangible property of a nonresident decedent having a situs in this state." However, in my opinion that section refers to such property having a situs in Missouri at the time of death. For this reason, I do not believe § 473.678 prevents a domiciliary foreign personal representative from maintaining an action in this state to recover assets having a situs in the domiciliary state at the time of death.

I recognize that, as stated in the principal opinion, numerous cases declare the common law general rule to be that an administrator appointed in one state cannot maintain an action in his representative capacity in another state and that Letters of Administration have no extraterritorial effect. I also acknowledge that Restatement (Second) of Conflicts §§ 320 and 321 (1971) support the principal opinion.

However, without an analysis of each of the cases referred to, it is sufficient to observe that in many of them the statement of the general rule is dictum. *In re Thompson's Estate,* supra. Further, in many others, the general rule is stated in respect to assets which had a situs in Missouri at the time of death. For example, see *Crohn v. Clay County State Bank,* supra. Also, it is significant that underlying many of those authorities was the proposition that an ancillary administration was subservient to a domiciliary administration. An example is the following Comment to § 321 of the Restatement (Second) of Conflicts:

> It is important that an executor or administrator should be able to take possession of chattels outside the state of his appointment. By his so doing, the expense and delay of an ancillary administration may be avoided and certain of the benefits of a unified administration obtained. Since the foreign executor or administrator who collects chattels locally is responsible to the court which appointed him for their proper management and application, the estate as a whole is protected regardless of which executor or administrator takes possession of the chattels.

The status of the administration of an estate in each state in which property of a decedent had a situs has changed. It is now generally recognized that administration proceedings with respect to property having a situs in a state "are original proceedings or procedures conducted under the authority of this state solely, and are independent of and not ancillary to proceedings or procedures in any other state or country." § 473.668. Also see *Blum v. Salyer,* 299 F.Supp. 1074 (W.D.Mo.1969); *In Re Estate of Maslowe,* 119 Ill.App.3d 776, 75 Ill.Dec. 361, 457 N.E.2d 151 (Ill. App. 2 Dist.1983); *Estate of Wilson v. National Bank of Commerce,* 364 So.2d 1117 (Miss.1978). It is generally held that situs is determined at the date of death. *Curtiss v. McCall,* 224 So.2d 354 (Fla.App. 1969); *In Re Estate of Maslowe,* supra; *Matter of Estate of Jackson,* 48 Ill.App.3d 1035, 6 Ill.Dec. 972, 363 N.E.2d 919 (1977). Further, it is declared that when appointed, the power of a personal representative relates to the date of death. *Daughters of Jesus v. Gee,* 153 Mont. 342, 457 P.2d 471 (1969); *Kelly v. Smith,* 7 Ohio App.2d 142, 219 N.E.2d 231 (1964). In respect to assets having a situs in a state appointing a personal representative, the common law general rule has been relaxed by decision and statute. For example see *Crosson v. Conlee,* 745 F.2d 896 (4th Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); *In Re Estate of Maslowe,* supra; *Hossler v. Barry,* 403 A.2d 762 (Me.1979); *Saporita v. Litner,* 371 Mass. 607, 358 N.E.2d 809 (1976); *Estate of Pettit v. Levine,* 657 S.W.2d 636 (Mo.App. 1983); *In Re Estate of De Camillis,* 66 Misc.2d 882, 322 N.Y.S.2d 551 (N.Y.Sur. 1971). Also see § 473.687 and § 507.020. Cf. Leflar, American Conflicts Law § 205 (3rd ed. 1977). The development of the law has been analytically developed in *Blum v. Salyer,* supra. It is for the reasons stated in the authorities last cited that I concur only in the result.